[Civ. No. 22197. First Dist., Div. Three. Nov. 29, 1965.]

In re MERCANTILE GUARANTY COMPANY on Dissolution. STATE OF CALIFORNIA, Plaintiff in Intervention and Appellant, v. MERCANTILE GUARANTY COMPANY, Defendant in Intervention and Respondent.

Thomas C. Lynch, Attorney General, and John E. Barsell, Jr., Deputy Attorney General, for Plaintiff in Intervention and Appellant.

Graham, James & Rolph and John M. Collette for Defendant in Intervention and Respondent.

BRAY, J.*—State of California appeals from summary judgment dismissing its complaint in intervention in the

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

voluntary dissolution proceedings of Mercantile Guaranty Company.[1]

## QUESTIONS PRESENTED

1. Have the California courts jurisdiction to wind up the affairs of a foreign corporation as to its property within the State?

2. Has the State an interest in this proceeding?

## RECORD

Mercantile is a Delaware corporation organized in 1924 with its principal place of business in San Francisco. Since 1960 it has become inactive in the business of finance for which it was organized except for the holding of the stocks comprising its assets and the collection of dividends thereon.

Mercantile's capital structure consists of 4,000 shares of issued and outstanding $25 par value 8 per cent cumulative redeemable preferred stock, and 4,000 shares of no par value common stock. Its bylaws provide that whenever the cumulative dividend is 18 months in arrears the preferred shares are entitled to voting rights. As no dividends have been paid on the preferred stock since 1929 all preferred shares are now entitled to vote. Mercantile's articles provide that on dissolution its assets shall be distributed, first in retirement of the full par value of the preferred shares and all accumulated dividends thereon, and thereafter to the holders of the outstanding common stock.

Of the 4,000 outstanding preferred shares, 2,403 were owned by Western States Acceptance Corporation. Western was organized in Delaware in 1924 primarily for the purpose of automobile financing. Western conducted all its business and issued all its stock in California. September 11, 1929, Western's board of directors voted to dissolve the corporation and distribute its assets (its shares of Mercantile) pro-rata to its preferred shareholders, the corporation then being seriously in arrears in the payment of dividends on its preferred shares. Apparently the necessary shareholder approval for this dissolution was never obtained.

Western thereafter remained qualified to do business in California until 1933 when it formally withdrew from California and retired to Delaware. Western continued to exist as a corporate entity in good standing in Delaware until 1935

---

[1]State of California will hereinafter be referred to as ''State''; Mercantile Guaranty Company as ''Mercantile''; and Western States Acceptance Corporation as ''Western''.

when it was suspended for failure to pay Delaware franchise taxes. It has had no active existence since.

No officers or directors of Western can be found. Of Western shareholders, only 12 have been located. These hold 172½ preferred shares and 40 common. Three of these stockholders exchanged their shares for Mercantile preferred shares. Thus only 90 preferred shares and 40 common shares of Western are located, and 97 per cent of the shareholders cannot be located. It is the interest of these missing shareholders that is the subject matter of this litigation.

Mercantile petitioned the superior court for an order appointing a trustee to vote the shares registered in Western's name at a shareholders' meeting to be called for the purpose of approving a proposed plan of liquidation, and for an order approving distribution of its assets as set forth in that plan. That plan in brief is that the court should provide that, on the liquidation of Mercantile, a reasonable time be given the preferred shareholders to offer their shares for retirement and for the pro rata distribution (par value plus dividend arrearages). Failure of any holder of stock in either Mercantile or Western to make a timely offer of his shares would result in a loss of the distribution otherwise payable in respect to such shares. Any amounts unclaimed at the end of the prescribed time period would be used first to satisfy the remaining unpaid dividend arrearages of those shareholders who had timely presented their shares for redemption, any balance to be distributed among the holders of the common stock upon a pro rata basis.

State filed its complaint in intervention alleging that Mercantile's plan of dissolution was improper and that the assets of Mercantile to which Western is entitled should be turned over to State in accordance with the California Unclaimed Property Act (Code Civ. Proc., §§ 1500-1527). Mercantile's demurrer to the complaint was overruled and its motion to strike denied. Both parties moved for summary judgment. The court denied State's motion and granted summary judgment in favor of Mercantile and dismissed the complaint in intervention. State's motion to modify or vacate this judgment and to grant a new trial was denied.

1. *Jurisdiction to Wind-up Corporation's Affairs.*

The parties agree that, in effect, Mercantile's petition is one for the purpose of winding up the affairs of Mercantile and distributing its assets and, to accomplish that purpose,

the court appoint a trustee to vote the shares of Western at a meeting of Mercantile's stockholders so as to enable a winding up of Mercantile's affairs and a distribution of its assets, and additionally for the court to approve Mercantile's proposed plan by which the interests of nonappearing stockholders eventually will be distributed to appearing stockholders.

We are, therefore, required to determine whether the courts of a state in which a foreign corporation has done business and in which its assets are there located have jurisdiction to wind up its affairs, even though the corporation was organized in another state. There are authorities holding that local courts may wind up the business of a foreign corporation as to property and assets which are within the local jurisdiction. In 17 Fletcher Cyclopedia of Corporations (1960 rev. vol.), section 8579, page 934, it is said "local courts may appoint receivers for the property and assets of a foreign corporation located in the state and wind up the affairs of such corporation so far as they are within the jurisdiction."

Fletcher, section 8554, page 843, further states: "There is some question as to whether a court will assume jurisdiction to appoint a receiver to wind up the affairs of a foreign corporation *and distribute its assets* where all its assets are within the jurisdiction. There is authority to the effect that this may be done even though the appointment will, in effect, amount to a dissolution. There is, likewise, authority apparently to the contrary." (Italics added.)

The authorities supporting the proposition that the local court will distribute the assets of a foreign corporation within its jurisdiction are *Starr* v. *Bankers' Union of the World,* 81 Neb. 377 [129 Am.St.Rep. 684, 116 N.W. 61]; *Hill* v. *Dealers' Credit Corp.,* 102 N.J.Eq. 310 [140 A. 569]; *Saltz* v. *Saltz Bros.,* 84 F.2d 246 [65 App. D.C. 393], cert. denied 299 U.S. 567 [57 S.Ct. 1, 81 L.Ed. 418].

In *Starr, supra,* a fraternal beneficiary society called the Order of the Iron Chain was organized under the laws of Minnesota, with its home offices in that state. After operating for several years, it entered into a written contract of consolidation with the defendant Bankers' Union, a Nebraska corporation, turning over to the latter its assets and its liabilities. A Nebraska district court appointed a receiver to take charge of the assets and affairs of Iron Chain, it having been previously held that Bankers' Union under the Nebraska law had no authority to purchase the business or assume the risks

of Iron Chain. The receiver then brought this suit against Bankers' Union to compel it to turn over the Iron Chain assets, books, accounts, etc. to him.

The court said: ''That a court should not appoint a receiver to administer the internal affairs of a foreign corporation is a very general rule, the reason for which is that the court cannot obtain control of all the property, books, records, and members of the corporation so as to do full justice between all the parties interested; but the operation of this rule ceases when the reason for it no longer exists, and whatever might be the objection to appointing a receiver for the property of a foreign corporation found in this state, where such property is only part of its assets, and where the books and records and officers of such corporation are beyond the process of the court, they do not apply in this case. Here all the assets, books, and records were brought into this jurisdiction. Here the defendants assumed to exercise the power and authority of the foreign corporation. No assets, no books, no person assuming to act as its officer remained in the state of its creation. Clearly the courts of this state in which all that remained of the Order of the Iron Chain had been brought by these defendants would be better able to take jurisdiction of an action by its beneficiaries and members than would the courts from the state from which it was abducted. Thompson on Corporations, §§ 8010, 8011. There nothing remained for the jurisdiction of that state to act upon, no funds, no records, and no officers, but those who had abdicated their authority and ceased to act for the order. None of the ordinary reasons why the courts of this state should not take jurisdiction of these assets remained, but whether the suit in which the receiver was appointed is considered as one to subject the assets of the foreign corporation found in this state to the payment of its debts, or whether it be considered as a suit to administer and wind up the affairs of such corporation, every reason exists why the courts of this state should take jurisdiction.'' (116 N.W. 63.)

There is some similarity in the facts of the case at bench to those in Bankers' Union. Here, as there, all the assets, books and records of the corporation are in this jurisdiction. All its business has been conducted in this state. There are no officers of the corporation in the foreign jurisdiction. Nothing remains for the foreign jurisdiction ''to act upon, no funds, no records and no officers.'' *Starr* v. *Bankers' Union of the World,* p. 63 [116 N.W.].)

In *Hill, supra,* a custodial receiver was appointed by a New Jersey court for the defendant Credit Corporation, which had been incorporated in Delaware. The corporation had never done business in Delaware. Its business was conducted in New Jersey and was still being conducted there. All the officers and directors and all the corporation's assets were in New Jersey. Due to certain manipulations by some of the corporation's officers, the business was at a standstill, its affairs were at an impasse. The court found that the appointment of a receiver was necessary to protect the stockholders. The court, citing a number of authorities, held that a court of equity has the power to administer the internal affairs of a foreign corporation but usually does not exercise that power as a matter of policy and expediency and not on lack of jurisdictional power. ''[T]he question is not one of jurisdiction; it is rather whether the court can, should it assume jurisdiction, make its decree effective. In other words, not whether it has jurisdiction, but should it in its discretion exercise the inherent jurisdiction which it possesses.'' (P. 571 [140 A.].)

*Saltz, supra,* involved a corporation organized in Connecticut but doing business solely and maintaining its office and assets in the District of Columbia. The Supreme Court of the District refused to appoint a receiver of the corporation on a complaint alleging failure of the corporation to comply with certain laws of Connecticut and alleging acts which it was claimed would result in the destruction of the corporation's business. The local court held that it had no right to interfere in the internal affairs of a foreign corporation. The reviewing court held that as all of the assets of the corporation were in the District, its business was actually being carried on there, and its connection with the State of Connecticut was intended to be purely nominal and as all of the parties in interest were then before the court, the District court possessed the authority and was charged with the duty of appointing a receiver for all the assets of the corporation in order that they might be administered for the benefit of all the parties interested therein.

The court quoted from *Williamson* v. *Missouri-Kansas Pipe Line Co.* (C.C.A.) 56 F.2d 503, 508, to the effect that the question of whether the local court should exercise jurisdiction over the foreign corporation was one of policy and expediency, and not of power, and then said: ''The opinion of the court also quotes from volume 6, par. 8011, of Thomp-

son's Commentaries on Corporations, to the effect that exceptions necessarily exist to the general rule that actions affecting the internal management of a corporation must be brought in the state of its incorporation, and presents the following example: '. . . Take, for instance . . . a case . . . where a manufacturing corporation migrated with its entire business, corporate books, and personnel, from the State of its creation into another State, and there did all its business and held all its corporate meetings. Clearly, the courts of the State in which it had thus . . . acquired a de facto domicile, would be better able to take jurisdiction of an action by its stockholders for the redress of grievances in respect of corporate management, than would a court of the jurisdiction from which it migrated.' '' (84 F.2d 249.)

17 Fletcher Cyclopedia of Corporations (1960 rev. vol.) section 8425, pages 419-420 sums up the situation this way: ''. . . most of the courts now hold that the question is not one of jurisdiction or power in the court of the state which is not the legal domicile of a foreign corporation, but it is a question rather of discretion in the court as to whether it will exercise jurisdiction. It is a question of the balance of convenience, of whether considerations of public policy, efficiency, expedience and justice to all parties interested demand that jurisdiction be retained in the foreign court, or that it be declined under the rule of forum non conveniens.''

Although there are authorities which appear to hold that local courts have no jurisdiction to wind up the affairs of a foreign corporation, it appears to us that the better rule is that stated in the above quotation from Fletcher, there said to be the rule of ''most of the courts''. The circumstances of the case at bench require a holding that the California courts assume jurisdiction of the winding up of Mercantile's affairs preparatory to a dissolution.

█ Therefore, as there are no known officers of Western to represent it, the superior court has jurisdiction to appoint a trustee to represent Western's interests as a stockholder of Mercantile in the winding up of its assets, all of which are in this State, and to vote for dissolution.

█ However, this does not mean that the superior court has the power to provide that assets distributable to a stockholder who cannot be located may be divided amongst other stockholders who can be located. Petitioners have cited no authority in Delaware, California or elsewhere holding that

the distributable interest of one corporate shareholder becomes, on his failure to claim it, the property of the other locatable shareholders.

### 2. *Has State an Interest in Mercantile's Assets?*

State's right to intervene in this proceeding depends upon whether it has an interest in the matter.

Section 387, Code of Civil Procedure, provides in pertinent part "At any time before trial, any person, *who has an interest in the matter in litigation,* . . . may intervene in the action or proceeding." (Italics added.)

". . . the condition of 'interest' is the criterion upon which the cases put the 'right' of intervention." (*In re Yokohama Specie Bank, Ltd.,* 86 Cal.App.2d 545, 554 [195 P.2d 555].) "The interest mentioned in the code which entitled a person to intervene in a suit between other persons must be in the matter in litigation and of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment." (*Elliott* v. *Superior Court,* 168 Cal. 727, 734 [145 P. 101].)

On Mercantile's dissolution, a proportionate share of its assets will be distributed to Western. On the latter's dissolution, those assets will be distributed to its stockholders. It is conceded that many of these stockholders cannot be located. State contends that many of these are residents of California and that on their failure to claim their respective distributed interests, those interests will escheat to the State of California. That they will escheat appears from the provisions of sections 1504 and 1506 of the Code of Civil Procedure which provide in pertinent part:

Section 1504: "(a) Any dividend, profit, distribution, interest, payment on principal, or other sum held or owing by a business association for or to its shareholder, certificate holder, member, bondholder, or other security holder, . . . who has not claimed it, or corresponded in writing with the business association concerning it, within seven years after the date prescribed for payment or delivery, is presumed abandoned if:

". . . . . . . . . . .

"(2) It is held or owing by a business association doing business in this State, . . . but not organized under the laws of or created in this State, and the records of the business

association indicate that the last known address of the person entitled thereto is in this State.

"(b) Any intangible interest in a business association, as evidenced by the stock records or membership records of the association, owned by a person who has not claimed a dividend presumed abandoned under paragraph (a) of this section, and who has not corresponded in writing with the business association concerning such interest for 15 years following the time such dividend was presumed abandoned, is presumed abandoned if:

" . . . . . . . . . . .

"(2) The business association is doing business in this State, . . . but was not organized under the laws of or created in this State, and the records of the business association indicate that the last known address of the person entitled to such interest is in this State.

"For the purposes of this chapter the business association with respect to such interest shall be deemed a holder.

"(c) Any dividends or other distributions held for or owing to a person at the time the stock or other security to which they attach became presumptively abandoned are also presumed abandoned as of the same time." (Amended by Stats. 1961, ch. 1904.)

Section 1506: "All intangible personal property and any income or increment thereon, held in a fiduciary capacity for the benefit of another person is presumed abandoned unless the owner has, within seven years after it becomes payable or distributable, increased or decreased the principal, accepted payment of principal or income, corresponded in writing concerning the property, or otherwise indicated an interest as evidenced by a memorandum on file with the fiduciary:

" . . . . . . . . . . .

"(b) If it is held by a business association, . . . or financial organization . . . doing business in this State, but not organized under the laws of or created in this State, and the records of the business association, . . . or financial organization indicate that the last known address of the person entitled thereto is in this State; or . . ."

 Defendant in intervention contends that the phrase "business association doing business in this State" in the sections above quoted should be construed literally and hence, as neither Mercantile nor Western would be actually doing business in this State at the times of their respective dissolutions,

section 1504· could not apply and there could be no escheat. But that section does not have such a literal application, particularly as to a foreign corporation which never has done business in any other state than California and which when it ceased to do business here did not do business elsewhere. The proposed construction would require that in order for escheat to occur, the corporation must actually continue to do business while in the process of dissolution. The procedure is just the opposite of that, the corporation ceases to do business and then dissolves.

It is true that the stockholders of both corporations have not yet abandoned their distributive shares, because distribution has not yet been made. However, it is reasonably probable from the agreed facts that there will be abandonment by stockholders. The intervener's complaint alleges that there are California stockholders. If there are such, the probability of abandonment gives the State an inchoate right to appear in this proceeding, in order to ensure that those stockholders' interests will not be taken from them before the time for abandonment to have occurred will arrive.

It is obvious that the interests of the stockholders on dissolution will escheat if not called for by them respectively. The problem is to what state will they escheat.

In *Texas* v. *New Jersey* (1965) 379 U.S. 674 [85 S.Ct. 626, 13 L.Ed.2d 596], the U.S. court had before it the question of what state had the power of escheat of debts owed by a corporation to various persons who had never appeared to collect them. The debtor corporation was incorporated in New Jersey. The principal place of business was in Pennsylvania. The last known addresses of the creditors were in Texas. Each of the three states claimed the right to declare escheat. The court pointed out that "with respect to tangible property, real or ·personal, it has always been the unquestioned rule[2] ·in all jurisdictions that only the State in which the property is located may escheat. But intangible property, such as· a debt which a person is entitled to collect, is not physical matter which can be located on a map." (P. 599.)

---

[2]The court elsewhere in its opinion pointed out that there were four different possible rules urged upon it by the parties, each of which has some support in the authorities. That the right to escheat would be in: 1. The state with the most significant "contacts" with the debt; 2. The state of domicile of the debtor; 3. The state where the corporation's principal place of business is located, and 4. The state of the creditor's last known address.

It then said "since the States separately are without constitutional power to provide a rule to settle this interstate controversy and since there is no applicable federal statute, it becomes our responsibility in the exercise of our original jurisdiction to adopt a rule which will settle the question of which State will be allowed to escheat this intangible property." (P. 599.)

After considering the four different rules which could be applied, the court held "that since a debt is property of the creditor, not of the debtor, fairness among the States requires that the right and power to escheat the debt should be accorded to the State of the creditor's last known address as shown by the debtor's books and records. Such a solution would be in line with one group of cases dealing with *intangible property* for other purposes in other areas of the law." (P. 601.) (Italics added.)

"Debts or choses in action, whether evidenced in the form of notes, bonds, drafts, certificates of stock, subscriptions for stock, etc., or not, are intangible property or property rights, which, in the strict sense of physical location, can have no real domicile or situs. But for the practical purposes of business, in dealing with, measuring, and enforcing them, it is found essential to impute to them a legal location, by the laws of which they may be treated and enforced." (*Mills* v. *Anderson* (1927) 238 Mich. 643 [214 N.W. 221, 225].)

In view of the decision of the United States Supreme Court in *Texas* v. *New Jersey, supra,* that the right and power to escheat intangible property is accorded to the state of the creditor's last known address, as shown in the corporation's books, upon a dissolution of Western, the share in its assets of stockholders who cannot be located but whose last known addresses are shown on Western's books as California, would escheat to the State of California.

Ultimately, a proportionate share of Mercantile's assets will go to Western's stockholders, many of whom are not locatable and have California addresses shown on Western's books. As their interests will escheat to the State of California, it obviously has an interest in this proceeding to see that Mercantile's affairs are properly wound up and its assets distributed proportionately to stockholders whose interests will escheat to the State of California.

As we have shown that State may intervene to protect its future rights, it is unnecessary to consider other contentions made by it.

Judgment reversed and the trial court is directed to grant State's motion to intervene in this proceeding.

Salsman, Acting P. J., and Devine, J., concurred.

A petition for a rehearing was denied December 28, 1965, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied January 26, 1966. Mosk, J., did not participate therein.