[Civ. No. 24551.    First Dist., Div. One.    June 21, 1968.]

In re MERCANTILE GUARANTY COMPANY, in Voluntary Dissolution. STATE OF CALIFORNIA, Plaintiff in Intervention and Appellant, v. MERCANTILE GUARANTY COMPANY, Defendant in Intervention and Respondent.

Thomas C. Lynch, Attorney General, John E. Barsell, Jr., Deputy Attorney General, for Plaintiff in Intervention and Appellant.

Graham & James, John M. Collette and William J. Ziegler, Jr., for Defendant in Intervention and Respondent.

MOLINARI, P. J.—This is a proceeding involving the voluntary dissolution of Mercantile Guaranty Company (hereinafter referred to as "Mercantile"), a Delaware corporation doing business in California. This court in a former opinion in this case held that the State of California (hereinafter referred to as "State") could intervene in the case and that the superior court had jurisdiction over the dissolution proceedings. (*In re Mercantile Guaranty Co.*, 238 Cal.App.2d 426 [48 Cal.Rptr. 589, 19 A.L.R.3d 1267].) Subsequently Mercantile requested the clerk of the court to enter dismissal of this action. State filed notices of motions to strike the voluntary dismissal and to compel Mercantile to answer certain interrogatories. After argument, the trial court filed an order denying State's motions and ordering entry of the dismissal of the action. State appeals from this order.

### The Record

Mercantile is a Delaware corporation organized in 1924 with its principal place of business in San Francisco. It was organized in the business of finance but has been inactive since 1960 except for the holding of the stocks comprising its assets and the collection of dividends thereon. Its capital structure consists of 4,000 shares of issued and outstanding $25 par value 8 percent cumulative redeemable preferred stock and 4,000 shares of no par value common stock. Its bylaws provide that whenever the cumulative dividend is 18 months in arrears the preferred shares are entitled to voting rights. No dividends have been paid on the preferred stock since 1929 and all preferred shares are now entitled to vote. Mercantile's articles provide that on dissolution its assets shall be distributed, first in retirement of the full par value of the preferred shares and all accumulated dividends thereon, and thereafter to the holders of the outstanding common stock.

Western States Acceptance Corporation (hereinafter referred to as "Western") was organized in Delaware in 1924 primarily for the purpose of automobile financing. Western conducted all its business and issued all its stock in California. A total of 2,238 of the 4,000 outstanding preferred shares of Mercantile are registered in the name of Western. In 1929 Western's board of directors voted to dissolve the corporation and distribute its assets (its shares of Mercantile)

pro rata to its preferred shareholders, the corporation being then seriously in arrears in the payment of dividends on its preferred shares. However, there is nothing in the corporate records of Western to indicate that the necessary shareholder approval for the dissolution was ever obtained. Western thereafter remained qualified to do business in California until 1933 when it formally withdrew from California and retired to Delaware, and in 1935 was suspended for failure to pay Delaware franchise taxes. It has had no active existence since, none of its officers or directors can be found, and only 12 of its shareholders have been located. These shareholders hold 90 preferred and 40 common shares of Western, which is less than 3 percent of the voting stock of Western. Ninety-seven percent of the shareholders of Western cannot be located.

Mercantile's original petition in this action prayed for an order appointing a trustee to vote the shares of the missing Western shareholders in order to permit liquidation of Mercantile, and also prayed for an order approving distribution of its assets pursuant to a proposed plan of liquidation, the details of which are not here relevant, but which are set forth in the prior opinion in this case. (238 Cal.App.2d at p. 429.) In the petition Mercantile stated that "there does not appear to be any good reason to continue the existence of petitioner under present circumstances, but on the contrary it would appear to be in the best interests of the shareholders and all persons connected with the corporation to dissolve and distribute its assets in accordance with the provisions of the Articles of Incorporation." The petition further alleged that the cumulative dividend arrearages on the preferred shares of Mercantile were in excess of $240,000 and that their total par value was $100,000, totaling about $340,000 due and payable to the preferred shares on liquidation of petitioner. The petition also alleged that the preferred shares that would be tendered on dissolution were equitably entitled to receive the liquidating distributions unclaimed by missing preferred shareholders since such dividends were not subject to the laws of escheat of California or Delaware. Further, Mercantile alleged in essence that since Western was essentially nonexistent, Mercantile could not make liquidation distributions of its assets that would normally go to Western without the appointment of a trustee or some other method of disposing of Mercantile's assets that would normally be distributable to Western.

In its complaint in intervention, State denied Mercantile's plan of distribution of assets insofar as it contemplated dis-

tribution so as to except Western; alleged that Western is still in existence for purposes of winding up its affairs; alleged that Mercantile's assets unclaimed by the missing preferred shareholders are subject to the Uniform Disposition of Unclaimed Property Act; and prayed that Western be entitled to its rights of distribution on liquidation of Mercantile, and that the assets on distribution to Western be disposed of in accordance with Corporations Code section 5009[1] and the Uniform Disposition of Unclaimed Property Act. (Code Civ. Proc., §§ 1500-1527.) (Hereafter referred to as ''Uniform Act.'')

In *In re Mercantile Guaranty Co., supra,* this court held that the State had a right to intervene in the case, since it appeared that a portion of the assets of Mercantile would escheat to the State under Code of Civil Procedure sections 1504 and 1506.[2] (238 Cal.App.2d at pp. 434-436, 437.)

### Does State's Complaint in Intervention Request Affirmative Relief so as to Prevent Mercantile From Dismissing the Action?

*No.* ■ Under section 581, subdivisions 1 and 5, the plaintiff may not dismiss an action, with or without prejudice, if the defendant has requested affirmative relief. The term ''defendant'' applies to an intervenor in the action if he has sought affirmative relief against a party to the action. (E.g., *Voyce* v. *Superior Court,* 20 Cal.2d 479, 485 [127 P.2d 536].) The question for our decision is whether State here has requested affirmative relief against Mercantile in its complaint in intervention.

■ State claims that the demand in its complaint that the assets unclaimed by missing preferred shareholders be turned over to it as escheated property under the Uniform Act constitutes a request for affirmative relief. State is apparently contending that its complaint is the equivalent of an action under section 1523, which authorizes the State Controller to bring an action to enforce delivery of property subject to escheat if an individual refuses to deliver such property to the Controller as required by the Uniform Act.

The cases cited by State (*Swanson* v. *Siem,* 7 Cal.2d 267 [60 P.2d 281]; *Voyce* v. *Superior Court, supra,* 20 Cal.2d 479, 484-485; *Robinson* v. *Placerville & S.V.R.R. Co.,* 65 Cal.2d

---

[1]This statute has no application to foreign corporation. See Corporations Code section 106.

[2]Unless otherwise indicated, all statutory references hereinafter made are to the Code of Civil Procedure.

263, 266 [3 P. 878]; *Moxley* v. *Robertson,* 169 Cal.App.2d 72, 77 [336 P.2d 992]; *Acock* v. *Halsey,* 90 Cal. 215, 219 [27 P. 193]; *Islais etc. Water Co.* v. *Allen,* 132 Cal. 432, 434, 438 [64 P. 713]; *Bogardus* v. *Santa Ana W. G. Assn.,* 41 Cal.App.2d 939, 952 [108 P.2d 52], although illustrative of the law that the plaintiff may not dismiss an action where the defendant has requested relief, are not helpful because their facts are not closely analogous to this case. We must, therefore, look to the general principles governing application of section 581.

█ Basically, the rule is that an answer (or complaint in intervention) does not seek affirmative relief unless it contains affirmative allegations or introduces new affirmative matter entitling the pleader to relief. (*Estate of Somers,* 82 Cal.App. 2d 757, 759 [187 P.2d 433]; *Wilson* v. *Los Angeles County Civil Service Com.,* 126 Cal.App.2d 679, 683 [273 P.2d 34]; *Simpson* v. *Superior Court,* 68 Cal.App.2d 821, 825 [158 P.2d 46].)

█ If State's complaint here amounted to an action under section 1523 demanding the delivery of unclaimed property, we think the complaint would clearly state a demand for affirmative relief against Mercantile. The complaint, however, does not state that Mercantile has refused to comply with a demand to deliver property that is subject to escheat to State. The statute expressly states, in pertinent part, "If any person refuses to deliver property to the State Controller as required under this chapter, the State Controller shall bring an action . . . to enforce such delivery." Thus, it is a prerequisite to such an action that there be a refusal to deliver specific property. Therefore, State's complaint is not the equivalent of an action to recover escheated property, since it is not couched in the language of the statute, does not demand any specific property, does not allege a refusal to deliver property, and appears to be nothing more than a denial of Mercantile's claim that its liquidating distributions will not escheat to California. State seeks to argue here that if its complaint fails to state a cause of action, Mercantile's "remedy" is to demur, and that said failure to state a claim is not a reason to hold that the complaint does not seek affirmative relief. █ We are satisfied, however, in view of the privilege of dismissing an action afforded by section 581 (see *Simpson* v. *Superior Court, supra,* 68 Cal.App. 2d 821, 825), that if a responsive pleading in a lawsuit does not on its face request affirmative relief, then the plaintiff's right to a voluntary dismissal is preserved notwithstanding

that he may also have the privilege of demurring to the answer or complaint in intervention. Accordingly, in order to curtail the plaintiff's privilege of dismissing his action voluntarily, the defendant must clearly and specifically bring himself within the terms of the statute, i.e., by plainly requesting affirmative relief.

■ Furthermore, as Mercantile points out, unless and until Mercantile liquidates itself, there is no unclaimed property in existence which State might recover under the Uniform Act. ■ The shareholders of a corporation do not have legal title to the assets or capital of the corporation, have no right to the possession thereof, may not transfer or assign the properties or assets of the corporation nor apply corporation funds to personal debts. (See 1 Fletcher, Cycl. Corp., pp. 134-137, 138-139; 11 Fletcher, Cycl. Corp., pp. 117-124; *Kohl* v. *Lilienthal*, 81 Cal. 378, 385 [20 P. 401, 22 P. 689]; *Baker Divide Mining Co.* v. *Maxfield*, 83 Cal.App.2d 241, 248 [188 P.2d 538].) State does not contend that it may force Mercantile to dissolve. ■ So long as Mercantile does not dissolve, its shareholders have, at best, equitable claims on its assets, and it cannot be said that these claims are such as might be subject to escheatment under the Uniform Act. Until they ripen into a right of possession, these claims are nonspecific and inchoate, and we do not think that an action to recover such claims will lie.

Nothing in the Uniform Act requires a contrary conclusion. There is nothing in the record indicating that there is in the possession of Mercantile any undistributed dividend profits, distributions, interest, or other sums of money so as to bring into play section 1504, subdivisions (a) and (b) which presume such dividends, distributions and sums to be abandoned under certain circumstances; nor does the record disclose any property held by Mercantile as a fiduciary which may be deemed abandoned under section 1506. In essence, the situation appears to be that Mercantile anticipates that *if* it liquidates, certain liquidation distributions to shareholders in Western will not be claimed and will be abandoned. In the prior opinion of this court it was noted that it is this probability of abandonment which "gives the State an inchoate right to appear in this proceeding, in order to ensure that those stockholders' interests will not be taken from them before the time for abandonment to have occurred will arrive." (238 Cal.App.2d at p. 436.) This language refers to the liquidation dividends. If Mercantile chooses not to liqui-

date, then there will be no such distribution, and the probability of abandonment vanishes.

State claims that the trend of the law has been to restrict the power of the plaintiff to dismiss. In support of this assertion it states that the original common law rule permitted dismissal by the plaintiff at any time before judgment and that this right was eroded in 1400 by an English statute, 2 Henry IV, ch. 7; 17 Am.Jur, § 64, and later in this country by Federal Rule 41(a) and California Code of Civil Procedure section 581, subdivision 1. We fail to see how this alleged "erosion" indicates any trend whatsoever. Section 581 has indeed put some limitations on the right to dismiss, but in this case it does not appear that those statutory limitations are applicable.

■■■■ State further argues, in its reply brief, that its complaint in intervention essentially demands, not only liquidating distributions, but also many other types of abandoned property including stock in both Mercantile and Western, corporate assets of both corporations, and funds held in trust for the benefit of Western's shareholders. State broadly characterizes these "abandoned assets" as "those property rights which the missing preferred shareholders of Western own by virtue of Western's minority shareholdings in Mercantile." This claim, however, is made for the first time on appeal. State's complaint in intervention says nothing about any such "abandoned assets" and by no stretch of the imagination may it be interpreted as a demand for any such assets under section 1523 or otherwise. As noted, the complaint merely questioned Mercantile's proposed plan of liquidation; alleged that Mercantile's assets specified in its complaint are subject to escheat; and prayed that said assets *on distribution to Western* be disposed of in accordance with the Uniform Act. Said assets named in Mercantile's complaint are liquidating distributions which have not yet been made nor distributed to Western. Accordingly the complaint does not demand any property yet in existence or subject to escheat to State.

We conclude that the complaint in intervention does not demand any affirmative relief against Mercantile, nor could it demand any of the property of the corporation unless and until Mercantile proceeded to liquidate and distribute its assets. State's inchoate right to represent the presumably missing shareholders has not yet ripened into a right to bring an action on their behalf to compel delivery to State of prop-

erty of Mercantile or Western. Accordingly, under section 581 Mercantile may abandon its dissolution proceedings notwithstanding the complaint in intervention.

### Are the Controlling Shareholders of Mercantile Estopped From Abandoning the Dissolution Proceedings?

*No*. State argues that in resisting its claims, Mercantile has incurred substantial expenses and fees, not for the benefit of the shareholders as a whole, but rather to further the personal interests of individual known shareholders at the expense of missing shareholders, in that Mercantile's entire liquidation plan was an attempt to distribute to the known shareholders monies due to the missing shareholders. State cites authorities for the proposition that these missing minority shareholders may not be compelled to contribute, through a deduction from corporate assets, to payment of the foregoing fees and expenses for services rendered on behalf of the majority shareholders, who disputed the right of the missing shareholders to any part of the corporate assets. Accordingly, State claims the right to raise an estoppel against Mercantile in its capacity as representative of the missing shareholders (see *Bank of America* v. *Cranston,* 252 Cal.App.2d 208, 211 [60 Cal.Rptr. 336]), and also claims an estoppel on its own behalf in that, reasonably believing that Mercantile was about to dissolve and adopt an illegal plan of distribution, State has expended considerable time, money, and effort to prevent an injustice to the minority shareholders.

The doctrine of estoppel (sometimes referred to as promissory estoppel or estoppel *in pais*) is generally invoked as a defensive matter, to prevent the party estopped from alleging or relying upon some fact or theory that would otherwise permit him to recover something from the party asserting the estoppel. (See generally 18 Cal.Jur.2d ''Estoppel.'' )The concept of using estoppel to prevent a plaintiff from dismissing a lawsuit is unusual but not wholly without precedent. In this respect State relies on *Times-Mirror Co.* v. *Superior Court,* 3 Cal.2d 309 [44 P.2d 547], in which a city was forced to complete a condemnation proceeding which it had initiated against the plaintiff's property. In that case the plaintiff justifiably believed that the city was about to take its property and therefore relocated its plant and constructed a new building at another location. After the plaintiff prevailed in the appellate court on the question of valuation of the property, the city filed notice of abandonment of the proceedings. The

Supreme Court held that the city was estopped on equitable grounds to abandon the case at that point and was required to proceed with the condemnation of the plaintiff's property.

The *Times-Mirror* case is one of a number of cases limiting the right of a public entity to abandon eminent domain proceedings. (See Annotation, Right to abandon . . . eminent domain proceedings, 121 A.L.R. 12, 18 [1939].) The application of the estoppel doctrine in this area is a fairly old and well-established practice. Section 1255a, subdivision (b) codifies the doctrine, providing that abandonment of an eminent domain proceeding may be set aside if detrimental reliance is present. No cases have been found, however, extending this doctrine to prevent private parties from dismissing lawsuits; rather, the cases appear to have assumed that the only limitations on the right of a party to dismiss a lawsuit are those to be found in section 581, discussed *supra*. There is therefore no authority for State's position that an equitable estoppel, independently of section 581, may operate to preclude dismissal of a corporate dissolution proceeding.

Since a dissolution proceeding is basically equitable in nature (see *In re Mercantile Guaranty Co., supra,* 238 Cal. App.2d 426, 432), it may well be that in a proper case a court might, in the exercise of its inherent powers to do complete equity, find that a party was estopped to abandon a lawsuit. Since such a decision would be an exercise of original equitable jurisdiction, it would appear to be one for the trial court to make in the first instance, since appellate courts are not in a position to determine the facts and ascertain whether detrimental reliance exists that prevents the termination of an action. Thus, in this case we cannot determine the truth or falsity of State's allegations that missing minority shareholders in Mercantile are being injured by the termination of the instant lawsuit. So far as we know, no lawsuits have been brought against said shareholders to force them to contribute anything to the costs of the litigation, and the expenses and fees incurred may or may not have been for the benefit of the corporation and may or may not have been charged against corporate assets. Further, for all we know it may be in the best interests of said minority shareholders that the litigation should be terminated, in that the costs attendant upon dissolution may further deplete such assets as are available for ultimate distribution. We simply have no way of knowing on the present record whether the facts are such that the equities

preponderate in favor of preventing Mercantile from dismissing its action.

The brief transcript of the proceedings below indicates that State did attempt to raise the estoppel issue in the trial court and that the court resolved said issue against State.[3] No attempt was made by State to offer any extrinsic evidence on this issue, nor does it now claim that the trial court prevented it from doing so. ■ Generally, whether estoppel exists is a question of fact and ordinarily the trial court's determination is binding on appeal unless the contrary conclusion is the only one to be reasonably drawn from the facts (*Alberts* v. *County of Los Angeles*, 62 Cal.2d 250, 266 [42 Cal.Rptr. 89, 398 P.2d 129]; *Henry* v. *City of Los Angeles*, 201 Cal.App.2d 299, 306 [20 Cal.Rptr. 440]); and the burden is upon the party alleging estoppel to prove it. (*Greiner* v. *Kirkpatrick*, 109 Cal.App.2d 798, 801 [241 P.2d 564]; *General Motors Accept. Corp.* v. *Gandy*, 200 Cal. 284, 295 [253 P. 137].) Thus in the *Times-Mirror* case, *supra*, the facts establishing the estoppel were all contained in the records of the litigation. ■ Here, on the contrary, the record does not support any of the factual allegations. The only tangible portion of the record on which State can here rely is the rule established in the previous opinion in this case that Mercantile's original plan of dissolution was improper insofar as it contemplated distributing sums due to missing shareholders to the known shareholders. This fact alone does not establish that it would be inequitable to permit Mercantile to cease to dissolve. To establish an estoppel State would have to show, at the very least, that the interests of the missing minority shareholders would be best served from an economic standpoint if the instant litigation were prolonged. State can point to no facts establishing this premise, and on the contrary it would appear at this point that the interests of all shareholders might be best served by a cessation of the instant litigation, which is, on State's admission, consuming corporate funds.

We conclude, accordingly, that the trial court did not err in its determination that Mercantile is not estopped from dismissing the instant lawsuit.

The order is affirmed.

---

[3] The trial court stated as follows: "Well, the equitable principles appeal to the Court, in view of the results, seems to me, equity gives them the right to do what they have done, . . . Counsel, when you weigh the equities, I think the equities, with all due respect, are on the side of the moving party [Mercantile]. . . . In so far as the equities of the case is concerned, the equities appear to this Court to be in his favor."

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied July 15, 1968, and appellant's petition for a hearing by the Supreme Court was denied September 11, 1968.