[No. A032342. First Dist., Div. Two. July 11, 1988.]

AETNA CASUALTY AND SURETY COMPANY, Plaintiff and Appellant, v.
HUMBOLDT LOADERS, INC., et al., Defendants and Respondents;
BOLLING, WALTER & GAWTHROP, Objector and Appellant.

**COUNSEL**

Craig E. Farmer, George E. Murphy and Bolling, Walter & Gawthrop for Plaintiff and Appellant and Objector and Appellant.

John W. Warren, Mitchell, Dedekam & Angell and Clifford B. Mitchell for Defendants and Respondents.

**OPINION**

**SMITH, J.**—Prior to commencement of trial, appellant Aetna Casualty & Surety Company (Aetna) attempted to dismiss its complaint for declaratory relief against respondents Humboldt Loaders, Inc., its owners Barbara Knapp and Gary Blanks and others who claimed coverage under Aetna's comprehensive general liability insurance contract with Humboldt. The court refused to allow the filing of the request for dismissal and a trial on the merits ensued, resulting in judgment against Aetna. Appellant Bolling, Walter & Gawthrop (Bolling) was the law firm representing Aetna in the declaratory relief action. After the trial the court imposed sanctions against Bolling for attempting to file the request for dismissal. Although a number

of other issues are raised on appeal, we conclude that Aetna had the absolute right to dismiss under former Code of Civil Procedure section 581, subdivision 1.[1] We therefore reverse both the judgment and the award of sanctions.

## BACKGROUND

In the predawn hours of June 29, 1982, a fire destroyed a warehouse located on a 14-acre parcel in Humboldt County. Title to the real property was held by G. E. Anderson and Jacqueline Anderson, doing business as Andersonia Forest Products, Inc. (Anderson). Resaw machinery owned by Anderson was also destroyed. Humboldt employees were in the process of building the resaw for Anderson. The eastern part of the building was also occupied by Humboldt and used in its compost business. At the time of the fire Aetna had issued a comprehensive general liability policy naming Humboldt Loaders Inc., Knapp and Blanks (collectively Humboldt) as insureds.

On September 8, 1982, Anderson filed suit for money damages against Humboldt claiming that the fire was the result of Humboldt's negligence in conducting welding operations in the eastern portion of the building (the damage action). On March 25, 1983, Aetna filed a complaint for declaratory relief against Humboldt, Anderson and others, by which it sought a judicial declaration that it was not obligated to defend or indemnify Humboldt for any claims arising out of the fire (the coverage action). The Humboldt defendants answered, admitting that a controversy over coverage existed between themselves and Aetna and seeking "a judgment that AETNA be required to pay damages for and to defend these answering Defendants . . ." and "for costs of suit." The Anderson defendants answered, alleging "that the denial of coverage is the product of bad faith," and praying for a declaration that the Aetna policy affords coverage to Humboldt in connection with Anderson's damage action.

On November 8, 1984,[2] a settlement conference was held in the damage action (*Anderson* v. *Humboldt*), in view of an upcoming trial date of December 3. Although Aetna was not a party, an Aetna attorney attended to facilitate settlement efforts. At the conference, it was revealed to Aetna that Anderson and Humboldt had stipulated that Anderson's recovery in the

---

[1] All citations are to the Code of Civil Procedure unless otherwise noted.
[2] All future dates references are to the calendar year 1984, unless otherwise noted.

damage action would be limited to whatever insurance proceeds were available from Aetna. Statements were then made by attorneys that settlement in the damage case would be more likely after the coverage action was resolved, and that the latter action should go to trial first.[3] The judge at the settlement conference, Judge Buffington, sought Aetna's consent to waive notice of trial so as to proceed with the coverage action on December 3. Aetna refused, however, maintaining that, due to incomplete discovery, it would be unable to try the coverage case until at least January 15, 1985. The conference adjourned without a settlement and it seemed apparent that the coverage action could not be tried ahead of the damage action unless the latter trial was postponed. Nevertheless, Judge Buffington found an unusual way to set the coverage case for trial over Aetna's notice objections.

On November 9, the judge issued an order sua sponte consolidating the coverage and damage actions "under C.C.P. § 1048" and severing all *defendants* in the coverage action except for the Humboldt and Anderson defendants. The court ordered both actions to trial on December 3, and ordered trial of the coverage action to proceed first.

In response to this rather unusual judicial directive commanding Aetna to go to trial without customary notice procedures or the ability to conduct further discovery, Aetna attempted to voluntarily dismiss the coverage action without prejudice on November 19. The clerk, apparently on the court's instructions, refused to file the request for dismissal tendered by Aetna. On November 27, Judge Buffington issued a written "Ruling" rejecting Aetna's attempt to dismiss this action. He acknowledged that the only "apparent bar" to Aetna's right to voluntary dismissal is where "the defendant has sought affirmative relief . . . ." However, he reasoned that affirmative relief need not have been sought by the defendants here because "there was no need to duplicate previous pleadings," and moreover that it would be "inequitable" to allow Aetna to file the dismissal. The coverage action proceeded to trial and Aetna lost, the court finding that coverage for Anderson's damage claim existed under the policy. Subsequently, on motion of the Andersons, the trial court awarded sanctions of $3,000 against the Bolling firm for attempting to file the request for dismissal.

---

[3] In a subsequent order, the judge indicated that Aetna's attorney had agreed with the proposition that the coverage action should be tried first. Aetna's attorney, however, denied this assertion and insisted that the judge had falsely attributed to him a statement actually made by *Humboldt's* attorney.

APPEAL

I

*Aetna's Right To Dismiss*

Aetna claims that pursuant to former section 581, subdivision 1 (hereinafter section 581(1)),[4] it had an absolute right to dismiss its complaint in the coverage action at any time before trial, because there was no affirmative relief sought by any defendant through cross-complaint or otherwise. Humboldt and Anderson (the defendants in that action) argue that, although their responsive pleadings were each captioned "Answer," various allegations therein met all the statutory requirements for cross-complaints, and therefore they constituted pleadings seeking "affirmative relief," sufficient to thwart Aetna's right to unilaterally dismiss under section 581(1).

At the time Aetna attempted to file the dismissal section 581(1) stated, "An action may be dismissed . . . [b]y plaintiff, by written request to the clerk, filed with the papers in the case, . . . at any time before the actual commencement of trial, . . . provided, that *affirmative relief has not been sought by the cross-complaint of the defendant. . . .*" (Italics added.) As the California Supreme Court has observed, "[a]part from certain . . . statutory exceptions, a plaintiff's right to a voluntary dismissal pursuant to subdivision 1 appears to be absolute." (*Wells* v. *Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 784 [176 Cal.Rptr. 104, 632 P.2d 217].) Witkin says it even more strongly: "Subject to a few exceptions . . . and to the condition of timeliness . . . , the plaintiff has an *absolute right* to dismiss *any kind of action or special proceeding* by following the procedure of C.C.P. 581, and neither the clerk nor the court has any discretion in the matter. [Citations.]" (6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 67, p. 379, second italics added.) Here, the only statutory exception claimed to be applicable is that of "affirmative relief" sought by the defendants.

Key language in section 581 was amended in 1971. Previously, the statute allowed plaintiff to dismiss at any time before trial provided " 'that a counterclaim has not been set up, or *affirmative relief sought* by the cross-complaint *or answer* of the defendant.' " (West's Annot. Code Civ. Proc. (1976), § 581, Historical Note, italics added.) In 1971 the Code of Civil Procedure

---

[4]Section 581 was completely rewritten in 1986 and amended in 1987. Substantially the same provisions set forth in former section 581 (1) are now found in section 581, subdivision (b). Unless otherwise indicated, all references to section 581(1) are to the version of the statute as it existed in 1984.

was overhauled to streamline pleadings. Section 428.80 abolished the counterclaim, and section 431.30, subdivision (c) was added, stating: *"Affirmative relief may not be claimed in the answer."* (Italics added.) Accordingly, the phrase "or answer" was deleted from section 581(1), with the result that only a cross-complaint seeking relief could abridge the right of voluntary dismissal. It appears this modification to section 581 was probably intended as a housekeeping amendment, intended to eliminate reference to affirmative relief sought in the answer because such a prayer was no longer allowed. (See 10 Cal. Law Revision Com. Rep. (1971) pp. 555, 561-562, 571-572.) As one comment on the amendment states: "Section 581 (re: dismissal) is amended to delete reference to 'counterclaim' and to seeking affirmative relief in an answer. Affirmative relief may not be sought in an answer; rather, where affirmative relief is sought in the same action on a cross-demand, it must be by cross-complaint [citation]." (Review of Selected 1971 Legislation (1972) 3 Pacific L.J. 258-259.) Although section 581 appears to have been amended "merely" to conform its language to other streamline-pleading sections, the amendment's effect is to substantively alter the terms under which a defendant can prevent voluntary dismissal.

In the case at bar, respondents did not file any cross-complaint, which, under section 581(1), appears to be a sine qua non of preventing voluntary dismissal. However they claim that their answers requesting a judicial declaration in favor of policy coverage were equivalent to cross-complaints for affirmative relief, and that Judge Buffington properly looked to the substance, not the form of their pleadings.

If this were a suit for money damages, our analysis would be quite simple because counterclaims for money by the defendant in an answer are obviously invalid. (Law Revision Com. com., West's Annot. Code Civ. Proc., § 581 (1976).) But in a suit for declaratory relief each side normally wants the same thing—a declaration of rights in its favor. (§ 1060.) If therefore, a mirror image prayer for declaratory relief in a defendant's answer constituted "affirmative relief" under the pre-1971 version of section 581, then perhaps a judicially implied exception to the mandatory language of sections 581(1) and 430.30 would merit serious consideration. However, the answers here do not seek affirmative relief even under the less stringent test applied under the old legislation.

Before 1971, a defendant could set up counterclaims and seek affirmative relief through a variety of pleadings, including an answer. When a plaintiff attempted to voluntarily dismiss, the clerk or the court customarily scrutinized the defendant's pleadings to determine if they asked for affirmative relief.

Even in that era, however, the cases hold that in a suit for declaratory relief, an allegation in defendant's answer which merely parrots the plaintiff's prayer for a declaration of rights and liabilities in its favor, does *not* amount to a claim for "affirmative relief" sufficient to impair plaintiff's absolute right to voluntary dismissal. (*Wilson* v. *L. A. County Civil Service Com.* (1954) 126 Cal.App.2d 679, 682-683 [273 P.2d 34], citing *Simpson* v. *Superior Court* (1945) 68 Cal.App.2d 821, 824-825 [158 P.2d 46].) The relevant facts of *Wilson* are identical to this case. After much pretrial activity the plaintiff attempted to file a written request to dismiss his complaint for declaratory relief. The clerk refused because he believed the answers sought affirmative relief. (*Wilson, supra,* at p. 680.) The appellate court disagreed, because the defendant's answer merely contained "a series of admissions, denials both general and specific, . . . affirmative defenses . . . . ¶ . . . ¶ [and a prayer that] 'the Court declare the rights and duties of the parties . . . .'" (*Id.,* at p. 683.) "'[A]ffirmative relief . . .' [under section 581] 'does not include mere defensive matter, by whatever name it may be called. . . . By affirmative relief as used in section 581 . . . is meant *the allegation of new matter which in effect amounts to a counterattack.* In other words, the relief sought, if granted, operates not as a defense but affirmatively and positively to defeat the plaintiff's cause of action.'" (*Wilson, supra,* 126 Cal.App.2d at pp. 682-683, quoting *Simpson* v. *Superior Court, supra,* 68 Cal.App.2d 821, 824-825, italics in *Wilson.*)

As in *Wilson,* the joint answer of the Humboldt defendants merely admits and denies various allegations of Aetna's complaint and seeks a declaration in defendants' favor. It merely asks the court to resolve the issue tendered by the plaintiff adversely to it. Consequently it did not request "affirmative relief" even under pre-1971 law. "[I]n order to curtail the plaintiff's privilege of dismissing his action voluntarily, the defendant must clearly and specifically bring himself within the terms of the statute, i.e., by plainly requesting affirmative relief." (*In re Mercantile Guaranty Co.* (1968) 263 Cal.App.2d 346, 352 [69 Cal.Rptr. 361].)

Anderson's answer does not fare much better—it generally and specifically denies every allegation in the complaint, and ends merely by alleging "that the denial of coverage is the product of bad faith." Mere incantation of the words "bad faith" does not state a cause of action. (See e.g., *Jackson* v. *State Farm Mutual Auto. Ins. Co.* (1983) 148 Cal.App.3d 1179, 1185 [196 Cal.Rptr. 474].) Although Anderson claims its answer substantively amounted to a cross-complaint, the allegation of "bad faith" is simply floated out like a wayward balloon, unattached to any "statement of the facts constituting [a] cause of action," which must accompany a valid

cross-complaint. (§ 425.10, subd. (a).) Nor, as we have seen, was it a prayer for affirmative relief under *Wilson, supra,* 126 Cal.App.2d 679.

Although respondents cite several cases decided before the 1971 amendments to support their claim that they sought affirmative relief in their answer (e.g., *Guardianship of Lyle* (1946) 77 Cal.App.2d 153 [174 P.2d 906]; *Hayden v. Collins* (1905) 1 Cal.App. 259 [81 P. 1120]; *Riley v. Superior Court* (1952) 111 Cal.App.2d 365 [244 P.2d 474]), all of them implicitly recognize the principles articulated in *Simpson v. Superior Court, supra,* 68 Cal.App.2d 821 and *Wilson v. L. A. County Civil Service Com., supra,* 126 Cal.App.2d 679.

Because neither of the answers requests affirmative relief as the courts construed that term in the prior version of section 581, even if we were to hold (contrary to the apparent unequivocal language of the 1971 amendments) that an answer seeking affirmative relief may effectively preclude voluntary dismissal of a declaratory relief action, respondents would still not meet the test.

In addition to the foregoing, we must also give effect to the 1971 amendments, which not only *prohibit* affirmative relief from being sought in an answer (§ 431.30, subd. (c)),[5] but permit voluntary dismissal unless defendant files a *cross-complaint* seeking such relief. (§ 581 (1), now found in § 581, subds. (b)(1) and (h).)

■ The enactment of section 426.60 as part of the same 1971 legislation does not, as respondents argue, alter our conclusion. The section appears in the article on "Compulsory Cross-Complaints," and provides that the article "does not apply where the only relief sought is a declaration of the rights and duties of the respective parties in an action for declaratory relief . . . ." (§ 426.60, subd. (c).) The effect of section 426.60, subdivision (c) is to protect a defendant in a declaratory relief action who fails to file a cross-complaint from forever *waiving* his right to obtain a judicial declaration of his rights and duties under a written instrument. (See §§ 426.30, 1060.) Section 426.60 does not affect the rule that affirmative relief may not be sought in an answer or declare that an answer praying for a declaration of rights is tantamount to a cross-complaint. In short, there is nothing about

---

[5] At oral argument counsel for respondents advanced the folksy argument that, "if it looks like a duck, if it walks like a duck and if it quacks like a duck, it should be treated as a duck," to support his contention that Andersons' answer should be deemed an affirmative-relief-seeking cross-complaint. (See *In re Deborah C.* (1981) 30 Cal.3d 125, 141 [177 Cal.Rptr. 852, 635 P.2d 446] (Mosk, J. conc.) This contention is soundly refuted by the enactment of section 431.30, in which the Legislature has quite clearly stated that no such "ducks" are permitted in the modern day pleading pond.

section 426.60 which indicates that declaratory relief actions were to be exempt from the directives of sections 431.30, subdivision (c) and 581(1), and our courts are loathe to imply exceptions which do not plainly appear in the language used by the Legislature. (See *Rowan* v. *City etc. of San Francisco* (1966) 244 Cal.App.2d 308, 314 [53 Cal.Rptr. 88].)

The court erred in refusing to allow Aetna to dismiss.

## II

### *Estoppel*

For the first time on appeal, respondents argue that Aetna was estopped from dismissing its complaint. Since a suit for declaratory relief is equitable, "it may well be that in a proper case a court might, in the exercise of its inherent powers to do complete equity, find that a party was estopped to abandon a lawsuit. Since such a decision would be an exercise of original equitable jurisdiction, it would appear to be one for the trial court to make in the first instance, since appellate courts are not in a position to determine the facts and ascertain whether detrimental reliance exists that prevents the termination of an action." (*In re Mercantile Guaranty Co., supra,* 263 Cal.App.2d 346, 355.) Judge Buffington's ruling rested on the (erroneous) statutory ground that the defendants came within the affirmative relief exception to section 581. While the court also stated that dismissal by Aetna "would also be inequitable," it never spoke of estoppel, let alone made findings on the issue.

This court lacks the ability to make the factual determinations necessary for a finding of estoppel. The presence of estoppel is a question of fact to be pleaded and proved. (*California Sch. Employees Assn.* v. *Jefferson Elementary Sch. Dist.* (1975) 45 Cal.App.3d 683, 693 [119 Cal.Rptr. 668]; *General Motors Accept. Corp.* v. *Gandy* (1927) 200 Cal. 284, 295 [253 P. 137].) No such proof was made before the lower court.[6] Accordingly, respondents cannot rely upon the doctrine as a basis for upholding the ruling. (*Malm-*

---

[6] One of the primary elements of estoppel is that the party seeking to be estopped has " 'by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief . . . .' " (7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 132, p. 5351, quoting Evid. Code, § 623.) Here, Aetna did nothing to lead respondents to believe they would go to trial on December 3. Indeed, the court's order precipitously directing the coverage action to go to trial within a few weeks' time came as the proverbial "bolt out of the blue," probably producing almost as much shock to respondents as it did to Aetna. In no sense can Aetna's conduct be characterized as inducing reliance or concealing facts unknown to its adversary. (See cases collected in 7 Witkin, Summary of Cal. Law, *op. cit. supra,* § 132, p. 5352.)

*strom* v. *Kaiser Aluminum & Chemical Corp.* (1986) 187 Cal.App.3d 299, 319 [231 Cal.Rptr. 820].)

## III

### *Lack of Jurisdiction*

■ "A dismissal of an action by a plaintiff under section 581, subdivision 1, when a defendant has not sought affirmative relief . . . is available to plaintiff as a matter of right and is accomplished by filing with the clerk a written request therefor. . . . [Citations.] Following entry of such dismissal, the trial court is without jurisdiction to act further in the action [citations] except for the limited purpose of awarding costs and statutory attorney's fees. [Citations.]" (*Associated Convalescent Enterprises* v. *Carl Marks & Co., Inc.* (1973) 33 Cal.App.3d 116, 120 [108 Cal.Rptr. 782].)

Here, the clerk refused to file the request or enter the dismissal. Since Aetna did everything within its power to comply with the statute at a time when its right to dismiss was absolute, the absence of an actual filing of the request or entry of dismissal is excused. The trial court was without power to prevent the filing of the request for dismissal (*Hopkins* v. *Superior Court* (1902) 136 Cal. 552, 554 [69 P. 299]) and the clerk was without power to prevent entry of the dismissal. (*Kaufman* v. *Superior Court* (1896) 115 Cal. 152, 156 [46 P. 904].) The dismissal was effective upon tender of the request and all subsequent proceedings were void. (*Associated Convalescent Enterprises, supra,* 33 Cal.App.3d 116, 120; *Gherman* v. *Colburn* (1971) 18 Cal.App.3d 1046, 1050 [96 Cal.Rptr. 424].) "[T]he failure of the clerk to perform his ministerial duties by entering the dismissal in the register, and causing a proper judgment of dismissal to be entered in his judgment-book, should not and cannot be allowed to affect the substantial rights of the parties. . . . [P]laintiff at that time had the right to dismiss his action, and had taken all the proper steps to that end, [and] that right could not be impaired or lost by the refusal of the clerk to perform a plain duty . . . ." (*Kaufman* v. *Superior Court, supra,* 115 Cal. 152, 156); see also 6 Witkin, Cal. Procedure, *op cit. supra,* § 79, pp. 388-390.) Finally, the fact that the coverage action had been consolidated with the damage action is of no consequence—a voluntary dismissal removes the court's jurisdiction over the dismissed suit even though it has been consolidated with another lawsuit for trial of common questions of fact. (*Los Angeles G. & E. Corp.* v. *Superior Ct.* (1921) 53 Cal.App. 701, 706 [200 P. 811].)

## IV

### *Sanctions*

Section 128.5 empowers a court to award attorney's fees and other expenses against an attorney who, on behalf of his client, engages in procedures which are "instituted in bad faith, are frivolous or brought for purposes of delay." (*Ellis* v. *Roshei Corp.* (1983) 143 Cal.App.3d 642, 648 [192 Cal.Rptr. 57].) Because, as we have held, Bolling had an absolute *right* to dismiss the complaint on behalf of its client Aetna, it requires no further discussion to conclude that its conduct in so doing was outside the scope of sanctionable conduct under section 128.5. The award of sanctions against the law firm must be vacated.

### DISPOSITION

The judgment and the order awarding sanctions are each reversed.

Rouse, Acting P. J., and Benson, J., concurred.

Respondents' petition for review by the Supreme Court was denied October 12, 1988.