OPINION OF THE COURT
B. Marc Mogil, J.
Plaintiff, a century-old Tennessee wholesale plant nursery, seeks to recover the contract price of $6,431 for plants purchased by defendant I.W.S., Inc., an Oceanside retail business operating as Discount Nursery. After a trial held on July 21, 1988, and posttrial submissions, this court makes the following findings of fact and conclusions of law.
BACKGROUND
On or about April 1985, plaintiff and defendant entered into an agreement for the sale and purchase of a quantity of *662 plants. The terms were sale and delivery C.O.D. with the express provision of "No Risk to Supplier”, and the large logo at the top of the papers stating "notice: all shipments travel at risk and cost of purchaser.” The plants were shipped by an experienced Interstate Commerce Commission-licensed truck common carrier, United Express. Upon arrival in New York, it appears that some plants were apparently in less than "premium” condition apparently owing to excessive heat at some point on the truck trip. Although the carrier on its own marked the bill of lading to indicate that the temperature in the truck should be 50 degrees, this was not done for at least a portion of the journey, and the dormant plants were exposed to an undetermined duration and degree of harmful temperature.
Defendant claims at trial that the entire shipment ("100%”) of plants was ruined or of nonsaleable character, and refused to pay. Defendant’s "general agent”, Irving Grossman, unilaterally wrote on the trucker’s bill of lading that the goods were rejected; however, they were retained in Oceanside "on consignment” at defendant’s premises. There were no other formal written rejections or official notices of breach or defect tendered by the buyer to the seller at any point prior to trial.
Upon immediate inspection by seller’s agent in New York, it was apparent to him that only several hundred dollars worth of damages existed (if that), and thus offered a price reduction. Such was refused and hence no payment at all was ever made. Plaintiff thereafter commenced this action against defendant for recovery of the full purchase price.
THE AGREEMENT
One issue before us is whether defendant is liable for the purchase price of the plants, despite the claim of damaged goods. According to the defendants, under section 2-509 of the Uniform Commercial Code (UCC), risk of loss should be upon the plaintiff, seller:
"(1) Where the contract requires or authorizes the seller to ship the goods by carrier * * *
"(b) if it does require him to deliver them at a particular destination and the goods are there duly tendered while in the possession of the carrier, the risk of loss passes to the buyer when the goods are there duly so tendered as to enable the buyer to take delivery.”
Although the agreement involves a sale of goods in which the *663 UCC is applicable, the underlying principle of the Code is "freedom of contract”.
In the instant proceeding, the only documents which could be construed in any way to be contracts were the invoices for the goods to be sold. However, these invoices were never signed by either party, and therefore fail to meet the formal requirements of a "contract” as set forth at UCC 2-201 (1). However, under section 2-201 (3) (b), a "contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is [nonetheless] enforceable * * * if the party against whom enforcement is sought admits in his pleading * * * that a contract for sale was made”. Defendant, in its bill of particulars, admits that these invoices were "contracts between the parties hereto for the goods sold and delivered.” Therefore, pursuant to defendant’s very own language and admission, the invoices are deemed by this court to be a valid contract, and thus enforceable pursuant to the provisions of UCC 2-201 (3) (b).
Moreover, the UCC was enacted to provide general uniformity in commercial transactions, but was never intended to be used by courts to create results that are contrary to the intentions of the parties. (UCC 1-102, Comments 1, 2.)
Similarly, in finally assessing the risk of loss issue, we must look to the intention of the parties. Clearly in the case at bar, intention was evidenced by the express provision in the contract that the plants were to be shipped with "No Risk to SupplierThe UCC makes clear that "provisions of [section 2-509] are subject to contrary agreement of the parties” (§ 2-509 [4]). Accordingly, this court finds on this point that the unambiguous language of the provision is susceptible to only one reasonable interpretation: that it was the intent of the parties in contracting to shift the risk of loss from the supplier. This the court will uphold.
Although there exist a myriad of Federal regulations governing interstate common carriers regarding untoward occurrences (see, 15 CJS, Commerce, §71 [3]), this court will not speculate upon the potential liability of an unnamed party.
Also, as to credibility of the witnesses, the court will merely assert that the gross inconsistencies, variances in mode and demeanor of supplying testimony, and the relationship or interest of the parties with the witnesses causes it to conclude that plaintiffs testimony was far the more believable. Generally, it is within a court’s discretion as trier of fact to substan *664 tially disregard the contradicted or inconsistent, and acknowledge attempts at suppression. (See, Richman v Active Vans Moving & Stor. Co., 27 Misc 2d 755; 58 NY Jur 2d, Evidence and Witnesses, § 976; 65 NY Jur, Witnesses, § 88; see also, Matter of Giddings, 96 Misc 2d 824.)
CONCLUSION
Accordingly, the court finds as a matter of both fact and law that plaintiff is entitled to and is hereby awarded judgment in the amount of $6,431, with costs and interest from June 11, 1985.