**SIAM NUMHONG PRODUCTS CO., LTD., a limited company organized and registered under the laws of Thailand, Plaintiff,**

v.

**EASTIMPEX, a California corporation, Defendant.**

**And Related Counterclaim.**

**No. C–93–3774 MHP.**

United States District Court, N.D. California.

Sept. 29, 1994.

Douglas D. Mancill, Graham & James, San Francisco, CA, for Siam Numhong Products Co., Ltd.

Donald F. Drummond, Mark M. Mullen, Lukens & Drummond, San Francisco, CA, for Eastimpex.

## MEMORANDUM AND ORDER

PATEL, District Judge.

Plaintiff Siam Numhong Products Co., Ltd. ("SNH") brought this action against defendant Eastimpex alleging breach of two written contracts and one oral contract for the manufacture and purchase of Thai bamboo shoots. Eastimpex filed related counterclaims. Now before the court is Eastimpex's motion for summary judgment on SNH's first and third claims for relief for breach of written contract and breach of oral contract.

Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

### BACKGROUND [1]

Plaintiff SNH is a Thai company that processes and sells Thai agricultural products to foreign distributors. Defendant Eastimpex is a California corporation that, among other things, imports foreign foodstuffs for resale to restaurant suppliers.

On August 1, 1991, Eastimpex offered to purchase and SNH agreed to provide 30,000 cartons of cultivated bamboo shoots at a certain price, pursuant to Eastimpex's purchase order number SE–8917 (the "SE–8917 contract"). Payment under the SE–8917 contract was to be made pursuant to a letter of credit executed by Eastimpex in favor of

---

1. Except as otherwise indicated, all facts in this section are taken from the Joint Statement of Undisputed Facts ("Joint Statement") submitted by the parties and undisputed portions of the record.

SNH. Originally, this letter of credit was open through December 31, 1991. Eastimpex did not take delivery of all of the product under the SE–8917 contract by December 31, 1991, and the parties dispute whether Eastimpex was obligated to take up delivery of all of the product by that date.

SNH requested that Eastimpex amend the SE–8917 contract letter of credit because otherwise SNH would incur bank penalties and a reduction of its credit rating, and payment under the contract would be unsecured. In response to SNH's request, Eastimpex obtained two extensions, the first to March 31, 1992 and the second to July 31, 1992.

Between August 1, 1991 and August 1, 1992 the market price for bamboo shoots declined. Between February 1992 and May 1993, SNH resold some of the SE–8917 product. By July 1992, SNH had resold at least 9,763 of the 30,000 cartons of bamboo shoots contracted for in the SE–8917 contract.

In June, 1991 Eastimpex opened a letter of credit in favor of SNH for a second agreement, this one involving wild bamboo shoots ("Wild Bamboo Shoot Contract"). No written purchase order was ever issued for this contract. Eastimpex refused to take up delivery of all of the wild bamboo shoot product it had ordered, claiming that there were problems with the product. On January 10, 1992 Eastimpex wrote that it would not extend the Wild Bamboo Shoot Contract letter of credit.

On October 19, 1993 SNH filed this action against Eastimpex alleging, *inter alia,* breach of written contract and breach of oral contract. Eastimpex answered and counterclaimed for breach of contract, breach of warranty of merchantability, breach of implied warranty of fitness and negligence.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial … since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (the nonmoving party may not rely on the pleadings but must present significant probative evidence supporting the claim); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

The court's function, however, is not to make credibility determinations, *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11, and the inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.,* 809 F.2d at 631.

## DISCUSSION

Eastimpex moves for summary judgment on SNH's first and third claims for relief. The court will discuss each claim in turn.[2]

### I. *The SE–8917 Written Contract*

■ In its first claim for relief, SNH alleges that although Eastimpex was to have taken delivery of the bamboo shoots under the SE–8917 contract by December 31, 1991, Eastimpex actually took delivery of only about 4,000 of the 30,000 cartons ordered by that date. SNH claims that Eastimpex told SNH to sell the remaining SE–8917 bamboo shoots to third parties to mitigate losses. SNH alleges that it therefore resold some of the SE–8917 bamboo shoots starting in February 1992, but did so at a lesser price and was unable to resell all of them.

---

2. SNH raises a number of objections to evidence submitted by Eastimpex in connection with this motion. Specifically, SNH moves to strike portions of the Declaration of Don A. Chan and accompanying exhibits. However, because the court need not rely upon any evidence in the disputed portions of the Chan declaration nor upon any of the exhibits objected to by SNH in resolving the instant motion, it need not reach SNH's evidentiary objections and declines to do so.

Eastimpex contends that it is entitled to summary judgment on this claim because it never gave written approval for the resales and in fact was not notified of them until February 25, 1993. Eastimpex argues that by reselling the bamboo shoots SNH breached by anticipatory repudiation within the meaning of California Uniform Commercial Code section 2610,[3] and that SNH's failure to obtain prior written approval for the resales violated the statute of frauds for sales of goods, section 2201, as required by section 2209(3).

In response, SNH argues that Eastimpex is equitably estopped from asserting a statute of frauds defense because it actually authorized SNH to resell the bamboo shoots both orally and in writing, and SNH detrimentally relied on that authorization. Furthermore, SNH contends not only that SNH did *not* anticipatorily repudiate the SE–8917 contract, but that Eastimpex itself anticipatorily breached the contract.

California's statute of frauds provides that a contract for the sale of goods in the amount of $500 or more is not enforceable "unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent...." Cal.Com. Code § 2201(1). Modifications that fall within this provision must satisfy the same requirements. *Id.* at § 2209(3). SNH admits that Eastimpex's resale authorizations were not in writing. Declaration of Mark M. Mullen, Ex. C, Resp. No. 2 to Req. for Adm. Accordingly, Eastimpex argues that the stat-ute of frauds bars SNH's first claim for relief and it is therefore entitled to summary judgment on that claim.

SNH does not argue that section 2209(3) is inapplicable.[4] Rather, it contends that Eastimpex is estopped from asserting the statute of frauds by section 1103, which preserves common law principles of law and equity unless specifically displaced by the Code. Thus, promissory estoppel may operate as an exception to the statute of frauds. *See Allied Grape Growers v. Bronco Wine Co.,* 203 Cal.App.3d 432, 442–444, 249 Cal. Rptr. 872, *rev. denied* (1988).[5] A party asserting estoppel must prove detrimental reliance and unconscionable injury in order to avoid the bar of the statute of frauds. *Id.* at 444, 249 Cal.Rptr. 872. "Unconscionable injury results from denying enforcement of a contract after one party is induced by another party to seriously change position relying upon the oral agreement." *Id.*

SNH has produced evidence that Suwimol "Molly" Korapintanont, general manager of Eastimpex Thailand, Ltd., authorized SNH to sell some of the bamboo shoots to mitigate losses. Declaration of Wipawadee Tivasuradej ¶ 13; Deposition of Wipawadee Tivasuradej at 77–78, 85–86; Declaration of Supoj Sathianvichitr ¶ 9. SNH claims that it reported the results of the resales to Eastimpex on an "almost daily basis" and that Eastimpex never complained. Tivasuradej Dec. ¶ 13; Tivasuradej Dep. at 86. SNH also points to an internal Eastimpex letter dated June 1992 purportedly confirming the authorization of the sale of remaining stock. Pl.'s Ex. L at SNH–54, Letter from Don A. Chan

---

3. Unless otherwise indicated, all further statutory references are to the California Uniform Commercial Code.

4. The court notes that it *may* be that section 2209(3) does not apply to the resale agreements in this case since they are merely agreements to resell and, apparently, no prices were set nor were these agreements contracts for sale of goods between the parties. However, neither party has raised or briefed this issue and the court declines to reach it.

5. Eastimpex claims that SNH may not raise the estoppel argument because it was not specifically pleaded in the complaint. *See Chalmers v. County of Los Angeles,* 175 Cal.App.3d 461, 467, 221 Cal.Rptr. 19 (1985). However, there was no occasion for SNH to plead estoppel in the complaint, since Eastimpex had not yet raised its affirmative defense of the statute of frauds. Furthermore, under these circumstances, estoppel is not an element of SNH's action but an additional exception to the statute of frauds defense, and proofs on the issue may yet be made in the trial court, thus avoiding the problems noted in *Aetna Casualty & Surety Co. v. Humboldt Loaders, Inc.,* 202 Cal.App.3d 921, 930–31, 249 Cal.Rptr. 175 (1988) (refusing to allow reliance upon estoppel doctrine when raised for the first time upon appeal). Furthermore, leave to amend at this stage would be freely granted. *See* Fed.R.Civ.P. 15(a).

to Molly Korapintanont; Tivasuradej Dec. ¶ 13. This letter, signed by Eastimpex chairman Don A. Chan, proposes that "SNH sell to any other buyer from the remaining stock at whatever price it can get" then "ship to San Francisco all unsold stock remaining." In response, Eastimpex points out that this letter was sent five months after SNH began its resales and claims that the letter was merely a proposal that was never accepted.

SNH has produced evidence from which a reasonable jury could conclude that it detrimentally relied on Eastimpex's verbal instructions (and other conduct) to resell the remaining bamboo shoots. Should a jury so conclude, Eastimpex's statute of frauds defense would fail. Accordingly, Eastimpex's motion for summary judgment on the SE–8917 contract claim must be denied.[6]

## II. *The Wild Bamboo Shoot Oral Contract*

■ In its third claim for relief, SNH alleges that in July 1991 Eastimpex orally agreed to purchase 30,000 cartons of wild bamboo shoots from SNH for a certain price ("Wild Bamboo Shoot Agreement"), and that Eastimpex breached the agreement by taking delivery of only 22,500 of 30,000 cartons ordered.

Eastimpex argues that it is entitled to summary judgment on this claim for relief because the Wild Bamboo Shoot Agreement was oral and is therefore unenforceable under the statute of frauds. Eastimpex places a premium on SNH's admission and characterization of the Wild Bamboo Shoot Agreement as an oral rather than written contract. *See* Complaint ¶ 18; Mullen Dec., Ex. B, Pl.'s Resp. No. 13 to Def.'s Req. for Adm. In response, SNH contends that the irrevocable letter of credit issued at Eastimpex's direction constitutes a written contract. Neither party's contention is entirely persuasive.

It is undisputed that Eastimpex issued an irrevocable letter of credit in favor of SNH for the Wild Bamboo Shoot Contract. This letter of credit described the goods, sales price, date for delivery, identity of the parties and the bank's obligations. *See* Pl.'s Ex. L at SNH–146–151, Letter of Credit. California courts have held that such letters of credit satisfy the requirements of sections 2201(1) and (2) and are enforceable against the sender.[7] *See Procyon Corp. v. Components Direct, Inc.*, 203 Cal.App.3d 409, 411–

---

6. SNH argues in the alternative that it was Eastimpex that anticipatorily breached the SE–917 contract at the outset under section 2609, which allows a party with "reasonable grounds for insecurity" to demand assurance of performance and deems the failure to assure within 30 days to be a repudiation of the contract. SNH claims that it had reasonable grounds for insecurity with respect to Eastimpex's performance under the SE–8917 contract when Eastimpex delayed taking up the bamboo shoots, delayed amending the SE–8917 letter of credit and characterized the U.S. bamboo shoot market as "miserable." Tivasuradej Dec. ¶ 9; Pl.'s Ex. K at EP–21, EP–111, EP–119, EP–124; Deposition of Don A. Chan at 253:25–254:7. Eastimpex allegedly never responded to a letter from SNH dated January 21, 1992 demanding "prompt attention" to the SE–8917 contract. Pl.'s Ex. L at SNH–186–189, letter of Supoj Sathianvichitr; Tivasuradej Dec. ¶ 13. A finding of repudiation under these facts would vitiate any statute of frauds defense by Eastimpex based upon SNH's actions *after* Eastimpex's breach.

There are two problems with this argument. First, this affirmative theory of contractual breach was never raised in SNH's original complaint. Second, SNH requested letter of credit extensions to March 31, 1992 and through July 31, 1992, well after SNH began sales to third parties in February 1992. SNH characterized these extensions as contract "modifications" in its original complaint. Complaint at ¶¶ 7–8. Such actions are inconsistent with an anticipatory breach theory and SNH cannot now maintain that it considered the SE–8917 contract repudiated as of late February 1992. Accordingly, Eastimpex's motion for summary judgment would not be defeated on this ground.

Two days before the court heard this motion, Eastimpex filed objections to much of the evidence SNH submitted in support of this argument. The court notes that much of the evidence objected to is documents produced by Eastimpex itself. However, because the court rejects SNH's theory of anticipatory repudiation for purposes of summary judgment, the court need not reach these evidentiary matters.

7. Section 2201(2) provides:

Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subdivision (1) against the party unless written notice of objection to its contents is given within 10 days after it is received.

13, 249 Cal.Rptr. 813 (1988). Like the letter of credit in *Procyon*, Eastimpex's letter of credit incorporated the terms of the oral contract and its very purpose was to guarantee payment and bind Eastimpex.

With respect to the requirement of a signature, the court in *Procyon* reasoned that the company that directed the bank to issue the letter and supplied the relevant terms "signed" it upon its issuance, since the bank "was acting as [the sender's] agent when it sent the letter." *Id.* at 413, 249 Cal.Rptr. 813. Similarly, Eastimpex instructed the issuing bank as to the terms of the letter of credit and must be held responsible upon issuance.

Although the letter of credit did not constitute a written contract, as urged by SNH, it did sufficiently "indicate that a contract for sale has been made between the parties" within the meaning of § 2201(1). Accordingly, because SNH has produced probative evidence that takes the Wild Bamboo Shoot Contract out from under the statute of frauds, Eastimpex's motion for summary judgment on this claim must be denied.

■ There is a further reason why Eastimpex is not entitled to summary judgment on this claim: the judicial admissions exception to the statute of frauds. Eastimpex has acknowledged the existence of a wild bamboo shoot contract in numerous pleadings and papers submitted to this court. *See* Joint Statement ¶¶ 29 & 32; Stip. Case Mgmt. Ord., Princ. Issues b and h; Counterclaim ¶ 5; Pl.'s Ex. J, Def.'s Resp. No. 5 to Req. to Adm.; Mullen Dec., Ex. A, Def.'s Req. for Adm., Defin. G.

■ California amended its statute of frauds in 1988, effective 1990, to provide a "judicial admissions" exception where "the party against whom enforcement is sought admits in his or her pleading, testimony, or otherwise in court that a contract for sale was made...." Cal.Com.Code § 2201(3)(b). The adoption of the judicial admissions exception emphasizes the *evidentiary* purpose of the statute of frauds. The California Supreme Court previously recognized this purpose in *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.*, 36 Cal.3d 752, 764,

206 Cal.Rptr. 354, 686 P.2d 1158 (1984), noting that the statute of frauds' primary purpose is to bar fraud-induced enforcement of contracts never actually made by requiring reliable evidence of the existence and terms of the contract. The statute of frauds is meant to prevent courts from enforcing an alleged oral contract that never actually was entered into, not to prevent enforcement of *all* oral contracts. *See id.*; Cal.Com.Code § 2201 Comm. 9. Thus, the statute of frauds defense may be asserted only against a wrongful allegation that one is a party to a contract, not simply to prevent enforcement of an agreement that happened to be oral.

There is no California case-law defining "judicial admission" under section 2201(3)(b). However, authorities from other jurisdictions with a similar exception are instructive. The rationale for the exception is that a party charged with a contractual obligation should not be able to assert the defense where it has admitted the existence of the contract. Courts have recognized that the danger of perjury by the party seeking to enforce the contract is dispelled when the other party admits to the oral agreement. *See Anchorage–Hynning & Co. v. Moringiello*, 697 F.2d 356, 360–63 (D.C.Cir.1983) (discussing the exception as a judicially-created one although the District of Columbia statute contains such an exception).

■ A judicial admission may be contained in a statement of undisputed facts, an answer, a bill of particulars or any other pleading, or it may be contained in testimony such as a deposition. *See Dairyland Financial Corp. v. FICB of St. Paul*, 852 F.2d 242, 246 (7th Cir.1988) (deposition testimony); *Babst v. FMC Corp.*, 661 F.Supp. 82, 88 (S.D.Fla. 1986) (same); *Forest Nursery Co. v. I.W.S., Inc.*, 141 Misc.2d 661, 534 N.Y.S.2d 86, 88 (N.Y.Dist.Ct.1988) (bill of particulars). Furthermore, the admission need not contain all the terms of the contract; it is sufficient if it describes the "conduct or circumstances from which the trier of fact can infer a contract." *Gruen Indus. Inc. v. Biller*, 608 F.2d 274, 278 (7th Cir.1979) (discussing the Wisconsin statutory exception, which is more restrictive than California's).

■ The court finds that Eastimpex's numerous "admissions" that an oral contract

existed constitute a judicial admission within the meaning of section 2201(3)(b), and therefore defeat its reliance on the statute of frauds.[8]

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment on the first and third claims for relief is hereby DENIED.

IT IS SO ORDERED.

**8.** SNH finally contends that Eastimpex is equitably estopped from asserting the statute of frauds against the Wild Bamboo Contract because SNH relied to its detriment upon Eastimpex's promise to perform. Eastimpex again claims that SNH may not raise the estoppel argument because it was not specifically plead in the complaint. For the reasons set forth in endnote 5 this argument fails.

As noted above, promissory estoppel is an exception to the statute of frauds. Cal.Com.Code § 1103. SNH has produced evidence that Eastimpex orally agreed with SNH for SNH to can, store and ship 30,000 containers of wild bamboo shoots to Eastimpex at a certain price. Tivasuradej Dec. ¶ 6. In reliance on Eastimpex's request, SNH spent substantial resources canning, labelling and storing the wild bamboo shoots. Tivasuradej Dec. ¶ 8. This reliance became detrimental when, after Eastimpex refused to take up delivery of the last of the wild bamboo shoots, SNH had difficulty selling the product to other customers because of market conditions. Tivasuradej Dec. ¶ 16; Tivasuradej Dep. at 88–89. SNH presents sufficient evidence to raise a genuine issue of material fact regarding the applicability of estoppel, thus precluding summary judgment on its third claim for relief.

Two days before the court heard this motion, Eastimpex filed objections to the portions of the Tivasuradej declaration describing the Wild Bamboo Shoot Contract, and to the copy of the Wild Bamboo Shoot Contract submitted by SNH (Exhibit L, pp. SNH 146–151). Eastimpex claims that the documents contain impermissible hearsay under Federal Rule of Evidence 801 and that the letter of credit is not properly authenticated under Federal Rule of Evidence 901. The portions of the Tivasuradej declaration noted above are merely duplicative of information found in the Wild Bamboo Shoot letter of credit.

This same evidence is cited as support for undisputed Fact No. 29 in the Joint Statement. Moreover, as noted by Eastimpex itself in its reply to SNH's own evidentiary objections, "[t]he burden of proof for authentication of a document is slight" and circumstantial evidence suffices. *See Link v. Mercedes–Benz,* 788 F.2d 918, 927 (3d Cir.1986). Declarant Tivasuradej, Vice President of SNH, has sworn under penalty of perjury that the copy of the Wild Bamboo Shoot Contract letter of credit is true and correct. Tivasuradej Dec. ¶ 6. Eastimpex makes no showing as to why the copy might be inaccurate. The objection to this document based on authentication is overruled. Because the disputed portions of the Tivasuradej declaration are duplicative of the letter of credit, the objection to those portions is overruled as well.