[No. D042175. Fourth Dist., Div. One. Apr. 12, 2004.]

Conservatorship of the Person of MARTHA P.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Petitioner and Respondent, v.
MARTHA P., Objector and Appellant.

## COUNSEL

Linda M. Fabian, under appointment by the Court of Appeal, for Objector and Appellant.

John J. Sansone, County Counsel and Leonard W. Pollard II, Deputy County Counsel, for Petitioner and Respondent.

## OPINION

**HUFFMAN, Acting P. J.**—Martha P.[1] appeals from the trial court's grant of the San Diego County Health and Human Service's Agency's Office of the

---

[1] We have abbreviated Martha P.'s name to protect her privacy. (See Welf. & Inst Code, § 5325.1, subd. (b).)

Public Conservator's (public conservator's) request to dismiss the petition to reestablish conservatorship of her person under the Lanterman-Petris-Short Act (LPS Act or Act), Welfare and Institutions Code section 5000 et seq., and termination of her conservatorship.[2] We are called upon to decide whether the voluntary dismissal provision of Code of Civil Procedure section 581, subdivision (b)(1) may be utilized by the public conservator to dismiss or withdraw a petition for the reestablishment of an LPS Act conservatorship. We answer this question in the affirmative, concluding that voluntary dismissal under Code of Civil Procedure section 581, subdivision (b)(1) is not inconsistent with the Act, and that the trial court properly found the public conservator could use that provision in this proceeding to dismiss the petition to reestablish Martha's LPS Act conservatorship.

I

## BACKGROUND

### A. *The Act*

As noted by our Supreme Court in *Conservatorship of Susan T.* (1994) 8 Cal.4th 1005 [36 Cal.Rptr.2d 40, 884 P.2d 988] (*Susan T.*), the LPS Act "governs the involuntary treatment of the mentally ill in California. Enacted by the Legislature in 1967, the Act includes among its goals ending the inappropriate and indefinite commitment of the mentally ill, providing prompt evaluation and treatment of persons with serious mental disorders, guaranteeing and protecting public safety, safeguarding the rights of the involuntarily committed through judicial review, and providing individualized treatment, supervision and placement services for the gravely disabled by means of a conservatorship program. (§ 5001.) The [A]ct limits involuntary commitment to successive periods of increasingly longer duration, beginning with a 72-hour detention for evaluation and treatment (§ 5150), which may be extended by certification for 14 days of intensive treatment (§ 5250); that initial period may be extended for an additional 14 days if the person detained is suicidal. (§ 5260.) In those counties that have elected to do so, the 14-day certification may be extended for an additional 30-day period for further intensive treatment. (§ 5270.15.) Persons found to be imminently dangerous may be involuntarily committed for up to 180 days beyond the

---

[2] Although the trial court entered an order granting the withdrawal of the petition to reestablish Martha's conservatorship and terminating the conservatorship of her person, its effect is that of a judgment of termination entered upon the grant of the dismissal request. (Welf. & Inst. Code, § 5362.) We therefore deem Martha's appeal from "the finding and the Order refusing to appoint a Conservator of the Person of MARTHA P." to be from the judgment of termination and the underlying order of dismissal. All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

14-day period. (§ 5300.) After the initial 72-hour detention, the 14-day and 30-day commitments each require a certification hearing before an appointed hearing officer to determine probable cause for confinement unless the detainee has filed a petition for the writ of habeas corpus. (§§ 5256, 5256.1, 5262, 5270.15, 5275, 5276.) A 180-day commitment requires a superior court order. (§ 5301.) [¶] The [A]ct authorizes the appointment of a conservator for up to one year for a person determined to be gravely disabled as a result of a mental disorder and unable or unwilling to accept voluntary treatment.[3] (§ 5350.) The proposed conservatee is entitled to demand a jury trial on the issue of his or her grave disability, and has a right to counsel at trial, appointed if necessary. (§§ 5350, 5365.) The party seeking imposition of the conservatorship must prove the proposed conservatee's grave disability beyond a reasonable doubt and the verdict must be issued by a unanimous jury. [Citation.]" (*Susan T., supra,* 8 Cal.4th at pp. 1008–1009, fn. in original.)

Once established, an LPS Act conservatorship automatically terminates at the end of one year "after the appointment of the conservator by the Superior Court[,]" unless the conservator petitions to reestablish conservatorship "at or before the termination of the one-year period." (§§ 5361–5362.) A conservatorship under the Act may be reestablished annually following a hearing or a trial at which the conservatee is entitled to the same procedural safeguards as those provided for establishing the original one-year conservatorship. (§§ 5350, subd. (d), 5362.) The demand for a court or jury trial in subsequent proceedings to reestablish conservatorship under the Act must "be made within five days following the hearing on the conservatorship petition." (§ 5350, subd. (d).) However, "[i]f the proposed conservatee demands a court or jury trial before the date of the hearing as provided for in Section 5365, such demand shall constitute a waiver of the hearing." (§ 5350, subd. (d); see *Conservatorship of Kevin M.* (1996) 49 Cal.App.4th 79, 84 [56 Cal.Rptr.2d 765].)

## B.   *Martha's Conservatorship Proceedings*

LPS Act proceedings for Martha began in October 2001. At that time, she was unable to provide for her basic needs due to her mental condition of schizophrenia, chronic undifferentiated type, and her numerous medical problems. After a hearing on November 20, 2001, the trial court granted the public conservator's petition to establish a year-long LPS Act conservatorship of the person, finding Martha was gravely disabled based on the stipulated evidence of the qualified physicians' opinions in the investigative report. The

---

[3] " 'Gravely disabled,' " as relevant to this case is defined as " 'unable to provide for . . . basic personal needs for food, clothing, or shelter.' (§ 5008, subd. (h)(1)(A).)"

court appointed the public conservator as Martha's conservator and ordered Martha be subject to certain disabilities and placement in a closed/locked treatment facility.

Sometime after the conservatorship was established, Martha was moved to a treatment facility in Pasadena, California. In July 2002, she was notified the conservatorship "may terminate" on November 20, 2002, unless a new petition to reestablish the conservatorship was filed before that time.

On October 21, 2002, the public conservator filed a petition to reestablish Martha's conservatorship of the person under the LPS Act based on allegations Martha was still gravely disabled as a result of a mental disorder and was unable to provide for her basic needs. (§§ 5350, 5361.) The reestablishment petition was supported by the opinions of two qualifying physicians. (§ 5361.) A hearing set for November 7, 2002 on the matter was continued to December 5, 2002, for further investigation. Martha waived the December hearing and demanded a jury trial, which the court then set for January 15, 2003.

On January 9, 2003, the trial was continued by stipulation of counsel to February 13, 2003. On January 13, 2003, Dean Caven, Martha's "common law husband," filed a petition for hearing in Martha's proceeding, requesting he be substituted as conservator of her conservatorship, which was set for hearing on the same date as the continued trial on the public conservator's reestablishment petition. The parties again stipulated to continue the trial date, which was then set for March 10, 2003.

On that date, the public conservator purportedly filed a request for dismissal under Code of Civil Procedure section 581 with the court clerk before the case was called. The record is unclear as to what transpired when the matter was then called, except to reflect it was reassigned to another superior court department "at the request of counsel." On March 13, 2003, the court accepted a stipulation of counsel to continue a motion hearing date set for March 18, 2003 to April 1, 2003.

On March 25, 2003, the public conservator filed a memorandum of points and authorities in support of dismissal, arguing that as the only party who may petition to establish an LPS Act conservatorship, she also has the absolute right to voluntarily dismiss the petition under Code of Civil Procedure section 581 by filing a written request to do so with the court clerk before the commencement of trial. On April 1, 2003, Martha filed a response opposing the public conservator's position, asserting there is no "plaintiff" in an LPS Act conservatorship to utilize the purely civil action dismissal provisions of Code of Civil Procedure section 581, and, in any event

Martha's demand for a jury trial in response to the reestablishment petition precludes voluntary dismissal. Martha also argued the request of dismissal should be denied because of the nature of LPS Act proceedings and the fact she would likely waive jury, stipulate to the reestablishment and request the court appoint Caven as the conservator.

At the April 1, 2003 hearing, the trial court indicated it had received the parties' pleadings filed "as a result of discussions we had last time in court." In light of the parties' positions, the court inquired whether there was a need for dismissal as opposed to a substitution in this matter and whether Caven could adopt as his own the reestablishment pleadings already filed by the public conservator. Counsel for the public conservator explained that because only the public conservator could petition for establishment of an LPS Act conservatorship, Caven could not legally do so and that he could be a substitute LPS Act conservator only if the public conservator recommended he be appointed. Counsel argued those matters were not before the court at that time, only the dismissal, which was "exclusively a matter of law."

When the court agreed with Martha's counsel that the matter was not yet dismissed, but was "on the calendar for a hearing on whether it should be dismissed[,]" the public conservator's counsel stated, "Well, technically speaking, your Honor, we have filed a dismissal, and our position is that the court has no discretion [other than to dismiss]."

After the court reviewed Code of Civil Procedure section 581, subdivision (b)(1), it agreed with the public conservator from a legal perspective, but questioned how it could "effect the purpose of the L.P.S. [Act] statute in allowing a private person, who wishes to be the conservator of somebody who is gravely disabled, to become that conservator." Although the court tentatively agreed it had no authority to prevent a dismissal, it also agreed "in the public interests in the case, that it would be appropriate, assuming the facts are shown to support a finding of grave disability, to allow the private person to become the conservator."

After further discussion regarding the appropriateness of a dismissal without any notice, the court located the standard Judicial Council written request for dismissal in the file,[4] commenting that because it had not yet been processed by the court, the matter had not yet been dismissed. Because counsel disagreed as to whether notice had properly been given, the trial judge continued the matter to April 10, 2003, to permit Martha's counsel to "file any papers that he believes support the establishment of private conservatorship [a]nd I will at that time make my ruling on the dismissal request by

---

[4] The dismissal request was file stamped April 1, 2003.

the public conservator." The court clarified that Martha's counsel needed to provide a doctor's statement regarding her grave disability so it could make a finding that "there is in fact a grave disability within the meaning of the [LPS Act] law. . . ."

On April 9, 2003, the public conservator filed the declaration of a court investigator from its office in support of dismissal. The investigator explained that since the filing of the petition to reestablish her conservatorship, Martha had been diagnosed with dementia, was no longer having behavioral problems and was voluntarily accepting treatment. As a result of these changes, the investigator believed Martha was no longer gravely disabled under the Act. In December 2002, the investigator had advised Caven that Martha was being moved back to San Diego County to an appropriate nursing home and that the public conservator would terminate the conservatorship. The investigator also advised Caven that if her condition changed in the future, Martha could petition to obtain a Probate Code section 2356.5 "dementia conservatorship." The investigator did not recommend Caven be Martha's conservator. Rather, the investigator requested dismissal of the underlying petition to reestablish Martha's LPS Act conservatorship.

At the April 10, 2003 hearing, the court stated it had reviewed the investigator's declaration which essentially represented Martha was no longer gravely disabled under the Act. It then reviewed a declaration from Martha's counsel regarding her requests to reestablish her conservatorship and to appoint Caven her conservator, and a letter from Martha's current doctor. When the court noted the doctor's letter also indicated Martha was not gravely disabled and "recommend[ed] that the [LPS Act] conservatorship petition be withdrawn[,]" Martha's counsel objected that the doctor's opinion was merely a legal conclusion.

When the court returned to the issue of whether it could prevent the public conservator from dismissing her petition to reestablish Martha's LPS Act conservatorship, the court determined it could not. The trial judge explained, "[i]n every adversarial proceeding, there is a plaintiff and a defendant, regardless of how the statute refers to them. The Code of Civil Procedure makes it clear when a case like this goes to trial, there are people on opposing sides . . . . In this case, the public conservator is the plaintiff. . . . [¶] I understand the defense position, but this is an adversarial proceeding[, a]nd the case is before me for potential reestablishment of a conservatorship. The public conservator, who is responsible for the reestablishment, does not wish to pursue it. My opinion is, from a legal standpoint, I have no authority to prevent it."

In the face of Martha's counsel's further objections that reestablishment of a conservatorship was necessary because Martha was gravely disabled, the

court found there was no evidence before it that she was still gravely disabled. The court ruled it was granting the motion for dismissal of the petition and that anyone who wanted to could pursue a conservatorship under the Probate Code.

When Martha's counsel claimed she was entitled to a jury trial after the hearing because she had demanded a jury trial on the reestablishment of her conservatorship, the court disagreed, stating there was no longer any issue before the court for a jury trial because the petition had been dismissed and, therefore, the matter was moot. When counsel for the public conservator then asked whether the court had also ruled on the ground there was no evidence to support the finding of grave disability, the court agreed that was "the secondary basis. The primary basis is there's a motion to dismiss. [U]nder the Code of Civil Procedure, the plaintiff has the right to dismiss the petition."

That same day, a formal written order withdrawing the petition to establish conservatorship and terminating the conservatorship of the person of Martha P. was filed, stating it was based on finding Martha no longer gravely disabled and granting the public conservator's request to dismiss the petition to reestablish her conservatorship. The order terminated Martha's LPS Act conservatorship as of April 10, 2003. This appeal followed.

## II

## DISCUSSION

Martha contends the trial court erred in finding that the public conservator appointed under the LPS Act had the absolute discretion to dismiss the petition to reestablish her conservatorship under Code of Civil Procedure section 581, subdivision (b)(1).[5] First, Martha argues this voluntary dismissal section is inapplicable to an LPS Act proceeding because it is a special proceeding unlike an ordinary civil action that involves the rights of others, similar to child custody and guardianship cases. Secondly, she essentially asserts that, even if such dismissal section applies, it was improper for the

---

[5] Although an order denying an LPS Act conservatorship is generally appealable (§ 5350; Prob. Code, § 1301, subd.(a)), an order dismissing an action or proceeding under Code of Civil Procedure section 581, subdivision (b)(1) generally is not. (See *H.D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1365–1367 [118 Cal.Rptr.2d 71].) The parties do not question the appealability of the court's order. Because the appeal essentially presents a question of law which we review de novo (*Groth Bros. Oldsmobile, Inc. v. Gallagher* (2002) 97 Cal.App.4th 60, 65 [118 Cal.Rptr.2d 405]), and the nature of conservatorship proceedings under the Act renders the issue one capable of recurring, yet of evading review because of mootness, we conclude it is appropriate to address the issue in this case. (See *Susan T., supra,* 8 Cal.4th at p. 1011, fn. 5; *H.D. Arnaiz, Ltd., supra,* 96 Cal.App.4th at pp. 1365–1367.)

court to permit the public conservator to dismiss the reestablishment petition because she had sought affirmative relief sufficient to preclude voluntary dismissal, the Superior Court of San Diego County Local Rules[6] do not permit such a dismissal, and the evidence showed she continued to be gravely disabled.

■ We conclude that Code of Civil Procedure section 581, subdivision (b)(1) is applicable to the reestablishment of LPS Act conservatorship proceedings and that the trial court did not error in ruling the public conservator had the discretion to exercise that dismissal section in this proceeding.

A. *Code of Civil Procedure Section 581, Subdivision (b)(1) Applies to the Reestablishment of an LPS Act Conservatorship*

Code of Civil Procedure section 581, subdivision (b) provides in relevant part that "an action may be dismissed . . . : [¶] (1) With or without prejudice, upon written request of the plaintiff to the clerk, filed with papers in the case, or by oral or written request to the court at any time before the actual commencement of trial . . . ." For purposes of this provision, "action" means "any civil action or special proceeding." (§ 581, subd. (a)(1).) The right to voluntarily dismiss an action or special proceeding before the commencement of trial, however, is not absolute. (*Cravens v. State Bd. of Equalization* (1997) 52 Cal.App.4th 253, 256 [60 Cal.Rptr.2d 436].) Section 581 of the Code of Civil Procedure recognizes exceptions to this right, and " 'other limitations have evolved through the courts' construction of the term "commencement of trial." These exceptions generally arise where the action has proceeded to a determinative adjudication, or to a decision that is tantamount to an adjudication.' [Citation.]" (*Mossanen v. Monfared* (2000) 77 Cal.App.4th 1402, 1409 [92 Cal.Rptr.2d 459].)

■ When this voluntary dismissal section applies and is properly utilized by a plaintiff presenting a dismissal request to the clerk or court, "[n]either the clerk nor the trial court has any discretion in the matter. [Citation.]" (*O'Dell v. Freightliner Corp.* (1992) 10 Cal.App.4th 645, 659 [12 Cal.Rptr.2d 774].) Further, after the proper exercise of the right to voluntarily dismiss an action or special proceeding " ' "a trial court would thereafter lack jurisdiction to enter further orders in the dismissed action [or special proceeding]" [citation], except for matters such as attorney's fees. [Citation.] An order by a court lacking subject matter jurisdiction is void.' [Citation.]" (*Zapanta v. Universal Care, Inc.* (2003) 107 Cal.App.4th 1167, 1171 [132 Cal.Rptr.2d

---

[6] All rule references are to the Superior Court of San Diego County Local Rules unless otherwise specified.

842] (*Zapanta*).) In other words, the voluntary dismissal of an action or special proceeding terminates the court's jurisdiction over the matter. (*Aetna Casualty & Surety Co. v. Humboldt Loaders, Inc.* (1988) 202 Cal.App.3d 921, 931 [249 Cal.Rptr. 175] (*Aetna*).)

Here, Martha asserts the voluntary dismissal provision of Code of Civil Procedure section 581 does not apply to the reestablishment of an LPS Act conservatorship because it is a special proceeding that is not like an ordinary civil action where "one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Code Civ. Proc., § 22.) Based on such reasoning, Martha argues that the public conservator is not a "plaintiff" and therefore cannot use Code of Civil Procedure section 581, subdivision (b)(1) to dismiss the petition to reestablish her conservatorship under the LPS Act. She also argues that an LPS Act conservatorship is similar to child custody and guardianship cases involving the rights of others, which do not permit dismissal without court approval. Martha's research is selective and incomplete.

■   Although Martha is correct that an involuntary commitment or recommitment proceeding under the LPS Act is a "special proceeding" (see *Bagration v. Superior Court* (2003) 110 Cal.App.4th 1677, 1685, fn. 7 [3 Cal.Rptr.3d 292]), she fails to appreciate that subdivision (a)(1) of section 581 of the Code of Civil Procedure specifically provides that that section applies to special proceedings.

In addition, section 5350, which is applicable to reestablishment proceedings (§ 5362), provides in pertinent part that "the procedure for establishing, administering and terminating conservatorship under this chapter shall be the same as that provided in Division 4 (commencing with Section 1400) of the Probate Code, except as [in certain circumstances and under various procedural requirements not applicable here.]" Although Division 4 of the Probate Code does not contain express provisions for dismissing a conservatorship petition, section 1827 of the Probate Code states that "[t]he court shall hear and determine the matter of the establishment of the conservatorship according to the law and procedure relating to the trial of civil actions, including trial by jury if demanded." The law and procedure relating to the trial of civil actions is contained in part 2 of the Code of Civil Procedure, wherein the voluntary dismissal provision is located. Such provision generally extends to a special proceeding when the statutes establishing the special proceeding expressly incorporate Code of Civil Procedure part 2 sections. (*Agricultural Labor Relations Bd. v. Tex-Cal Land Management, Inc.* (1987) 43 Cal.3d 696, 707 [238 Cal.Rptr. 780, 739 P.2d 140].) Because the LPS Act specifically does so via the Probate Code, the dismissal provisions of Code of Civil

Procedure section 581 necessarily apply to the reestablishment of an LPS Act conservatorship. (See *Guardianship of Brown* (1976) 16 Cal.3d 326, 332 [128 Cal.Rptr. 10, 546 P.2d 298].)

■ Moreover, Code of Civil Procedure section 367, which is also in part 2 of the Code of Civil Procedure, provides that "[e]very action must be prosecuted in the name of the real party in interest," or in the name of the person to whom the right to prosecute the matter was given by statute. (*Black Rock Placer Mining Dist. v. Summit Water & Irrigation Co.* (1943) 56 Cal.App.2d 513 [133 P.2d 58].) Section 1063 of the Code of Civil Procedure further provides that "the party prosecuting a special proceeding may be known as the plaintiff, and the adverse party as the defendant." Therefore, contrary to Martha's position, the public conservator here, who had been appointed the conservator of her LPS Act conservatorship, was the only person with the statutory right to petition to reestablish her LPS Act conservatorship. (§§ 5352, 5361; see *Kaplan v. Superior Court* (1989) 216 Cal.App.3d 1354, 1358 [265 Cal.Rptr. 408] (*Kaplan*).) Accordingly, the public conservator is a "plaintiff" for purposes of the LPS Act special proceeding who may utilize Code of Civil Procedure section 581, subdivision (b)(1) to voluntarily dismiss the reestablishment petition.

Our conclusion that the appointed conservator has the discretion to voluntarily dismiss a petition for the reestablishment of an LPS Act conservatorship before trial commences, or other statutory or case law limitations preclude such right, is also consistent with the LPS Act's legislative goal of "preventing, inappropriate, indefinite commitments of [persons gravely disabled due to a mental disorder]. [Citation.]" (*Ford v. Norton* (2001) 89 Cal.App.4th 974, 979 [107 Cal.Rptr.2d 776].) Under the LPS Act statutory scheme, it is a public official that has the duty to investigate the need for reestablishment of a conservatorship which may lead to continued commitment under the Act and who has the sole discretion to file a petition in light of that investigation. (§§ 5361–5362.) It is also either the district attorney or the county counsel representing the public conservator, in this case the county counsel, who has the duty of presenting evidence at the hearing or requested trial to reestablish the LPS Act conservatorship to prove that the conservatee is still gravely disabled and in need of conservatorship under the Act. (§§ 5114, 5362.) In light of the protections in the LPS Act to ensure the earliest termination of an involuntary commitment and the "social stigma attaching to one found 'gravely disabled' as a result of a mental disorder" (*Kaplan, supra*, 216 Cal.App.3d at p. 1360), it is only appropriate that the conservator in reestablishment proceedings have the discretion to dismiss or withdraw a petition when the investigation shows the conservatee is no longer gravely disabled. Martha's reliance on selective child custody and guardianship cases to argue otherwise is unfounded. (But see *Zapanta, supra*, 107 Cal.App.4th at pp 1171–1175.)

## B. *The Trial Court Properly Permitted the Public Conservator to Dismiss the Petition to Reestablish Martha's LPS Act Conservatorship*

Having concluded that Code of Civil Procedure section 581, subdivision (b)(1) is applicable in the reestablishment of an LPS Act conservatorship, the question becomes whether the public conservator's exercise of discretion to voluntarily dismiss the petition to reestablish Martha's conservatorship in this proceeding was proper. As noted above, Martha argues voluntary dismissal was precluded in this case because affirmative relief was sought before the public conservator sought dismissal, the rules do not permit such a dismissal, and the evidence showed she was still gravely disabled and in need of a conservatorship. We reject Martha's various arguments.

### 1. *The Purported Requests for Affirmative Relief Were Insufficient and Untimely to Preclude Voluntary Dismissal Under Code of Civil Procedure Section 581*

Subdivision (i) of section 581 of the Code of Civil Procedure provides in pertinent part that, "[n]o dismissal of an action may be made or entered or both, under paragraph (1) of subdivision (b) where affirmative relief has been sought by the cross-complaint of a defendant. . . ." The "controlling factor" in determining whether a plaintiff has the right to dismiss under Code of Civil Procedure section 581 has been held to be whether the other party has requested affirmative relief, regardless of the form of the pleading. (*Guardianship of Lyle* (1946) 77 Cal.App.2d 153, 155 [174 P.2d 906] (*Lyle*).) Relying on this limitation to voluntary dismissal and *Lyle*, which held a guardianship petition there could not be dismissed under Code of Civil Procedure section 581 because a second petition had been filed in that case similar to a cross-complaint requesting affirmative relief (*Lyle, supra,* 77 Cal.App.2d at p. 157), Martha argues that affirmative relief sought by her and Caven precluded voluntary dismissal in this case. In support of this assertion, Martha points to her requests through her attorney orally at the April 1, 2003, and in writing filed at the April 10, 2003 hearing to stipulate to the reestablishment of the conservatorship and to accept Caven's petition to be substituted as her conservator. Martha also claims Caven's January 2003 filing of a petition for hearing to be substituted as conservator in this matter was by itself a request for affirmative relief that prevented the court from dismissing the petition. Based on this record and current law, we cannot find a request for affirmative relief sufficient or timely to preclude voluntary dismissal.

Since the amendment of Code of Civil Procedure section 581 in 1971, " ' "affirmative relief . . ." [under that section] "does not include mere defensive matter, by whatever name it may be called. . . . By affirmative relief

as used in [Code of Civil Procedure] section 581 . . . is meant the allegation of new matter which in effect amounts to a counterattack. In other words, the relief sought, if granted, operates not as a defense but affirmatively and positively to defeat the plaintiff's cause of action." ' [Citations.]" (*Aetna, supra,* 202 Cal.App.3d at p. 928, italics omitted.) "[I]n order to curtail the plaintiff's privilege of dismissing [an action or special proceeding] voluntarily, the defendant must clearly and specifically bring [him or her]self within the terms of the statute, i.e., by plainly requesting affirmative relief." (*In re Mercantile Guaranty Co.* (1968) 263 Cal.App.2d 346, 352 [69 Cal.Rptr. 361].) The affirmative relief request must necessarily be sought before the voluntary dismissal is tendered. (*Aetna, supra,* 202 Cal.App.3d at p. 931.)

Here, although Caven's petition for hearing was filed before the voluntary dismissal was tendered by the public conservator to the court clerk on March 10, 2003, and filed with the court on April 1, 2003, it did not present an allegation of new matter attacking the reestablishment of the LPS Act conservatorship. It merely requested such conservatorship be reestablished with a different conservator. Moreover, because the public conservator was the only party who could file a petition to reestablish Martha's LPS Act conservatorship under the statutory scheme, Caven did not have standing to file a petition in the proceeding. It is the public conservator who would be able to request Caven be substituted as conservator in her stead if another one year LPS Act conservatorship were found to be necessary. Thus, unlike the situation in *Lyle,* where two petitions were found to be properly filed and both asked for affirmative relief, here there was only one proper petition before the court for the LPS Act reestablishment proceeding. (See *Lyle, supra,* 77 Cal.App.2d at pp. 157–158.)

■    Additionally, even if Martha's oral and written offers to stipulate to the reestablishment of her conservatorship and request Caven as conservator through her attorney were somehow construed as requests for affirmative relief, they were made after the voluntary dismissal was tendered to the court clerk and court. Although the clerk did not file the request or enter dismissal at that time, and the court did not process it until after continuing the matter to determine whether such dismissal was proper, failure of the clerk and court to perform their respective ministerial duties to enter the voluntary dismissal in the proceeding at the time it was tendered does not affect the right of the public conservator to dismiss the reestablishment petition as of that earlier date. (See *Aetna, supra,* 202 Cal.App.3d at p. 931.) Essentially, at that time the court "was without power to prevent the filing of the request for dismissal [citation] and the clerk was without power to prevent entry of the dismissal. [Citation.]" (*Ibid.*) No timely affirmative relief request is shown that would have prevented the voluntary dismissal.

## 2. *Nothing in the Local Rules Precludes the Voluntary Dismissal*

Martha also asserts the local rules preclude the voluntary dismissal of the public conservator's petition to reestablish her conservatorship without holding a hearing on whether she remained gravely disabled. She reaches this contention through the absence of rules providing a specific right to dismiss a petition to reappoint a conservator and her reading of the remaining rules. She posits that because rule 4.274B states "the regular procedures for terminating conservatorships will be followed [by referring to the Reappointment of Conservator]" when a petition is to be withdrawn by the conservator, and there are no specific rules for terminating conservatorships under the rules for reappointment of conservator, the rules for early termination of conservatorships must necessarily apply to the withdrawal or dismissal of a petition to reappoint a conservator. (See rules 4.241–4.251, 4.265–4.271.) Because rules 4.265 through 4.269 governing early termination require court action and a hearing where one of the attorneys, like here, has objected to early termination before the court may take action, Martha argues those requirements must be satisfied before a petition to reestablish a conservatorship or reappoint a conservator may be granted. She maintains the hearings held on April 1 and 10, 2003 in this proceeding were not the type of evidentiary hearings that satisfy those requirements.

We need not address whether those hearings satisfied the rules for early termination because we do not believe those rules apply in this proceeding. Quite simply the public conservator was not petitioning the court for early termination of Martha's LPS Act conservatorship. Instead, Martha's conservatorship had statutorily terminated after one year and was before the court on a petition to reestablish the conservatorship. (§ 5361.) As Martha notes in her opening brief, there are no rules that specifically apply to the withdrawal or dismissal of such a petition. Therefore, no rules preclude the public conservator from exercising the right to voluntarily dismiss the petition.

## 3. *The Question of Whether Martha Continued to be Gravely Disabled*

Finally, Martha claims it was reversible error for the court to terminate her LPS Act conservatorship because the evidence showed she continued to be gravely disabled. We decline to consider this question.

■ As already noted, having found the public conservator's exercise of discretion to file a voluntary dismissal of the reestablishment petition proper, dismissal was effective upon its tender to the court clerk or court. (*Aetna, supra*, 202 Cal.App.3d at p. 931.) Following the entry of such a dismissal, the trial court is without jurisdiction to act further in the action or proceeding because the pleading on which the court acquired jurisdiction over the matter

is essentially withdrawn. (*Ibid.*) Subsequent actions in the matter are generally held to be void. (*Ibid.*) However, in the case of a proceeding commenced by a petition to reestablish an LPS Act conservatorship, section 5362 provides that "[if] the conservator does not petition to reestablish conservatorship . . . , the court shall issue a decree terminating conservatorship."

In this case, when the public conservator tendered or filed the voluntary dismissal of the subject reestablishment petition, that petition was effectively withdrawn, leaving no petition to reestablish Martha's conservatorship that had statutorily terminated at the end of one year. (§§ 5361–5362.) At that time, the court was without jurisdiction to take any action other than to "issue a decree terminating conservatorship." (§ 5362.) Although the court's actions in conducting hearings on whether the dismissal was proper and whether Martha was still gravely disabled were technically in excess of its jurisdiction, neither party objected. In any event, the trial court eventually arrived at the correct answer that the dismissal was proper and entered an order dismissing the petition and a judgment terminating Martha's LPS Act conservatorship. Accordingly, we affirm the court's ruling dismissing the petition and the judgment terminating the conservatorship.

### DISPOSITION

The judgment is affirmed. Each party shall bear her own costs on appeal.

O'Rourke, J., and Aaron, J., concurred.