[No. F056252. Fifth Dist. Mar. 18, 2009.]

321 HENDERSON RECEIVABLES ORIGINATION LLC, Plaintiff and Appellant, v.
LISA RAMOS, Defendant and Respondent.

COUNSEL

Reed Smith, Margaret M. Grignon, Wendy S. Albers, Zareh A. Jaltorossian; McCormick, Barstow, James P. Wagoner and Todd W. Baxter for Plaintiff and Appellant.

Nesbitt, Vassar, McCown & Roden, Earl S. Nesbitt; Horvitz & Levy, Lisa Perrochet and Dean A. Bochner, for National Association of Settlement Purchasers as Amicus Curiae on behalf of Plaintiff and Appellant.

Lisa Ramos, in pro. per., for Defendant and Respondent.

OPINION

ARDAIZ, P. J.—

## INTRODUCTION

In this appeal from an order denying petition for approval of transfer of structured settlement payment, appellant, 321 Henderson Receivables Origination LLC (hereinafter Henderson), contends that the superior court exceeded its authority in issuing the order. For the following reasons, we reverse.[1]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

### A. General Background

Henderson, an indirect subsidiary of J.G. Wentworth, LLC, is a factoring company. Factoring companies engage in the business of paying people who have received a structured settlement annuity because of a successful tort claim of a lump sum payment and, in exchange, the right to some or all of the

---

[1] We also grant Henderson's request for judicial notice.

[2] We have included a full background and procedural history, which is based upon the record filed by and the representations made by the appellant, in order to provide context to Henderson's decision to appeal. For clarity's sake, with respect to the procedural matters, we have also included the names of the superior court judges.

structured settlement annuity payments is transferred to the factoring company. Henderson earns a profit, in part, by paying these persons a lump sum payment that is less than the discounted face value of the annuity payments. Partially in response to then pending federal legislation that would provide favorable tax treatment to structured settlement transfers that were court approved, California enacted a law, the Structured Settlement Transfer Act (hereinafter SSTA), that requires (1) disclosures to the seller of the structured settlement payment rights, (2) notice to the Attorney General, and (3) court approval. (See Ins. Code, § 10136 et seq.)[3]

The court approval process requires the factoring company to file a petition in the county in which the transferor resides for approval of the transfer, attaching copies of the petition, the transfer agreement, the disclosure form, the annuity contract, any qualified assignment agreement and the structured settlement agreement, a list of the names and ages of the transferor's dependents, notice of the court hearing date, and notice of a right to respond. (§ 10139.5, subd. (c).)

After consideration of the petition and its attached documents, any written support or opposition by interested parties, and any evidence presented at the hearing, the court grants or denies the petition. In order to grant the petition for approval, the court must expressly find (1) the transfer is in the best interest of the transferor, taking into account the welfare and support of the transferor's dependents; (2) the transferor has been advised in writing to seek independent professional advice and either has received that advice or knowingly waived it; (3) the transferor has received the disclosure form; (4) the transfer agreement complies with sections 10136 and 10138; (5) the transfer does not contravene any applicable statute or court order; (6) the transferor reasonably understands the terms of the transfer agreement and disclosure form; and (7) the transferor understands his or her right to cancel and does not wish to do so. (§ 10139.5, subd. (a).)

The transfer agreement is effective only upon approval in a final court order. (§ 10139.5, subd. (a).) The court that approves the transfer retains "continuing jurisdiction to interpret and monitor the implementation of the transfer agreement." (§ 10139.5, subd. (f).) A transfer that is not court approved and does not comply with the requirements of the SSTA is void. (§ 10137.)

Since the SSTA court approval requirement went into effect, California courts have approved thousands of structured settlement transfers; Henderson alone has obtained judicial approval of more than 2,000 structured settlement

---

[3] All further section citations are to the Insurance Code, unless otherwise stated.

payment transfers throughout California. However, beginning in March of 2008, several superior court judges in Fresno County began to deny petitions for court approval of structured settlement payment transfers based upon actual or perceived misconduct on the part of factoring companies and concerns that the transfers could violate the antiassignment provisions in the annuity contracts and underlying settlement agreements. Henderson has appealed 11 of these orders. This court has consolidated those appeals.

## B.  *In re Lisa Ramos* Petition

On July 14, 2006, Henderson filed a petition for approval of the transfer of some but not all structured settlement payments that Ms. Ramos was to receive pursuant to an annuity issued by Monumental Life Insurance Company. The petition was approved by Judge M. Bruce Smith on or about September 7, 2006. In his minute order, Judge Smith expressly found that "[t]he petition and attachments thereto are in compliance with Cal. Ins. Code § 10134 *et seq.* [the SSTA]." Judge Smith's minute order directed Henderson to submit a formal proposed order approving the transfer.

Pursuant to the court's order, Henderson filed a detailed proposed stipulation and order for approval of the transfer, setting forth the terms of the parties' agreement as well as the disclosures provided to Ms. Ramos. In the order, the court made the express written finding that "[t]he transfer of the structured settlement payment rights is fair and reasonable and in the best interest of [Ms. Ramos]." Henderson, Ms. Ramos, the annuity company (Monumental Life), and the settlement obligor (Aegon), signed the stipulation and order, expressly consenting to the transfer of the payments under the annuity. Judge Smith signed the order on September 13, 2006.

Nearly two years later, in June 2008, Armando and Maricelda Cerroblanco, acting in propria persona, filed a petition for transfer of a settlement annuity payment of $50,000 allegedly due to Ms. Ramos on May 16, 2009 (hereinafter the Cerroblanco Petition). The Cerroblanco Petition named Henderson as the "Annuity Issuer" and was served on Henderson's former counsel, Mr. Ahtirski, who represented Henderson in the earlier 2006 Henderson petition. The Cerroblanco Petition was filed in the wrong county because Ms. Ramos had moved from Fresno to Tulare County. (See § 10139.5, subd. (c)(1) [petition to be filed in county of payee's residence].) The Cerroblancos also improperly filed their petition under the earlier case number for the 2006 Henderson petition. The case was assigned to Judge Adolfo M. Corona.

Although the Cerroblancos mailed a copy of their petition to Henderson's former counsel, Henderson alleged that it did not learn of the Cerroblanco

Petition until the afternoon of July 14, 2008. According to Henderson, its current counsel, Reed Smith, in the course of monitoring the status of other SSTA petitions pending before the Fresno Superior Court, discovered that Judge Alan M. Simpson had tentatively ruled on the Cerroblanco Petition on that date.

In his July 14, 2008 tentative ruling, Judge Simpson stated that the terms of the Cerroblancos' contract to buy part of Ms. Ramos's structured settlement payments were "confusing." He interpreted the petition to be asking whether the 2006 Henderson petition was valid, and he ruled that the prior 2006 Henderson transfer was not valid. Judge Simpson declared that the prior transfer was void because "it violated the terms of the annuity agreement, which bars such transfers" and because it "also contravened the order of the Court approving only a structured settlement as in the best interests of Ms. Ramos." Judge Simpson also concluded that the prior transfer was void because the 2006 Henderson petition did not include a complete copy of the annuity, the petition was not verified, the purchase agreement contained blanks, $3,250 in expenses were not itemized, and the transfer violated California's usury law. Judge Simpson also ruled that the payments transferred to Henderson belonged to Ms. Ramos.

Henderson objected to the tentative order on several substantive and procedural grounds. Besides objecting to the specific findings of the superior court, Henderson also objected to the order on the grounds that it violated Henderson's right to due process because "the Order purports to void a final order and thereby deprive Henderson of payments to which it is entitled by contract and a final court order, without any notice to Henderson or opportunity to object." Henderson further contended that the superior court was without authority to overturn Judge Smith's final order in a prior proceeding.

Henderson also filed a statement of disqualification and alternative peremptory challenge to Judge Simpson under Code of Civil Procedure sections 170.3, subdivision (c)(1), and 170.6, subdivision (a)(2).

At the July 15, 2008 hearing on the Cerroblanco Petition, Judge Simpson declined to rule on Henderson's objection, stating that the case had in fact been assigned to Judge Corona. Judge Simpson held that the statement of disqualification and alternative peremptory challenge were moot, and re-scheduled the hearing before Judge Corona.

According to Henderson, shortly after the hearing before Judge Simpson, Henderson's counsel, Margaret Grignon of Reed Smith, was contacted by a representative of Maricelda Cerroblanco. Ms. Cerroblanco's representative revealed that Ms. Cerroblanco is Ms. Ramos's aunt, that Ms. Ramos owed

her some money, and that Ms. Ramos had suggested to her that, since Ms. Ramos did not sell all her annuity payments to Henderson, that Ms. Cerroblanco should "do what Henderson did" and file her own petition with the court to effect the purchase of enough of the remaining payments to satisfy Ms. Ramos's debt to Ms. Cerroblanco. Ms. Cerroblanco's representative asked Ms. Grignon whether Ms. Grignon could help her dismiss the Cerroblanco Petition.

After clearly explaining that neither she nor Reed Smith represented the Cerroblancos and advising Ms. Cerroblanco to consult her own counsel, Ms. Grignon agreed to prepare a request for dismissal of the petition without prejudice for the Cerroblancos' and Ms. Ramos's signatures. Accordingly, Ms. Grignon prepared dismissal requests for the Cerroblancos and Ms. Ramos, and sent them to the parties for execution and upon their return, instructed an attorney service to file them. However, Henderson alleges that the clerk of the Fresno County Superior Court would not accept the filing of the dismissals.

On August 13, 2008, Henderson's counsel again attempted to file the dismissals. The clerk refused to accept the filing and stated, according to Henderson, that "we were told not to take dismissals on Henderson cases." The clerk did, however, agree to take possession of the dismissals, stamp them received, and deliver them to "the research attorney."

On August 27, 2008, Judge Corona issued a tentative ruling on the Cerroblanco Petition, in which he essentially adopted Judge Simpson's prior tentative ruling. The tentative ruling contained language similar to Judge Simpson's prior tentative ruling, including the observation that the terms of the Cerroblancos' contract to buy part of the structured settlement payment rights were "confusing." Judge Corona also decided to interpret the Cerroblanco Petition as seeking to determine whether the prior 2006 Henderson petition was valid, and concluded that it was invalid for the same reasons as Judge Simpson. Judge Corona indicated that he would not enter the dismissal requested by the Cerroblancos and Ms. Ramos because Henderson had not consented to the dismissal. Although Henderson believed that it was not a party to the Cerroblanco Petition, on the next day Henderson filed a consent to the dismissal request. Henderson also appeared before Judge Corona that same day to contest the tentative ruling.

On September 3, 2008, Judge Corona issued the final order adopting the tentative ruling. In the order, Judge Corona (1) denied the request for dismissal of the Cerroblanco Petition without prejudice on the ground that Henderson had not timely consented to the dismissal; (2) denied the Cerroblanco Petition and dismissed the matter with prejudice; and (3) voided

the prior 2006 transfer to Henderson based upon purported violations of the SSTA, breach of the antiassignment provisions in the annuity, and violation of California usury law. Judge Corona further found that the payments that had been transferred to Henderson belonged to Ms. Ramos and that Henderson was not entitled to recover the purchase price it had paid for those payments.

Henderson timely filed a notice of appeal and later filed a petition for writ of supersedeas to stay enforcement of the superior court's order pending appeal. On December 26, 2008, this court granted Henderson's petition for the writ of supersedeas.

## DISCUSSION

On appeal, Henderson contends that the superior court erred when it concluded that the Cerroblancos could not voluntarily dismiss their SSTA petition without prejudice. Henderson also contends that the superior court erred in voiding the 2006 Henderson SSTA petition. We agree with both contentions.

### A. Voluntary Dismissal of the Cerroblanco Petition

#### 1. *Dismissal Under Code of Civil Procedure Section 581*

█ Code of Civil Procedure section 581, subdivision (b), provides that "[a]n action may be dismissed in any of the following instances: [¶] (1) . . . [¶] (2) With or without prejudice, by any party upon the written consent of all other parties." "Apart from certain . . . statutory exceptions, a plaintiff's right to a voluntary dismissal pursuant to subdivision 1 appears to be absolute. [Citation.] Upon the proper exercise of that right, a trial court would thereafter lack jurisdiction to enter further orders in the dismissed action." (*Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 784 [176 Cal.Rptr. 104, 632 P.2d 217] (*Wells*).) "Alternatively stated, voluntary dismissal of an entire action deprives the court of both subject matter and personal jurisdiction in that case, except for the limited purpose of awarding costs and statutory attorney fees. [Citations.]" (*Gogri v. Jack in the Box Inc.* (2008) 166 Cal.App.4th 255, 261 [82 Cal.Rptr.3d 629] (*Gogri*).) "An order by a court lacking subject matter jurisdiction is void. [Citation.]" (*Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 909 [84 Cal.Rptr.2d 303] (*Kyle*).) Where the facts are undisputed, we review de novo the superior court's denial of a request for dismissal under Code of Civil Procedure section 581. (*Gogri, supra*, 166 Cal.App.4th at p. 264.)

█ Code of Civil Procedure section 581, subdivision (b) may be used to voluntarily dismiss an SSTA petition because the SSTA court-approval

process is a "special proceeding." (Code Civ. Proc., § 581, subd. (a)(1) [defining an "[a]ction" that may be dismissed under that section as "any civil action or special proceeding"]; see also *Conservatorship of Martha P.* (2004) 117 Cal.App.4th 857, 867 [12 Cal.Rptr.3d 142] [holding that Code Civ. Proc., § 581 applies to special proceedings].) The SSTA court-approval process is a special proceeding because it is a proceeding in a court of justice where a party is not seeking a "declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense" against another party. (Code Civ. Proc., § 22; see *id.*, § 23.)

■ Under Code of Civil Procedure section 581, subdivision (b), an action, such as the SSTA petition for approval, may be voluntarily dismissed by a plaintiff or a party to the action provided that certain statutory requirements are met. (See Code Civ. Proc., § 581(b)(1), (2).) The person filing the SSTA petition is both the plaintiff and a party to the SSTA action for the purposes of voluntary dismissal under Code of Civil Procedure section 581 because that person is the one authorized to prosecute the action. Under Code of Civil Procedure section 367, "[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." The phrase "except as otherwise provided by statute" has been interpreted to require that an action must be prosecuted in the name of the person to whom the right to prosecute the matter was given by statute. (*Conservatorship of Martha P., supra*, 117 Cal.App.4th at p. 868.) Under the SSTA, and specifically under section 10139.5, subdivision (c)(1), "[a]n application under this article for approval of a transfer of structured settlement payment rights shall be made by the transferee . . . ." Thus, the transferee is the person to whom the right to prosecute the matter is given by statute. Furthermore, "[t]he party prosecuting a special proceeding may be known as the plaintiff . . . ." (Code Civ. Proc., § 1063.) Thus, the petitioner in an SSTA action is a plaintiff and a party to the SSTA action.

### 2. *Voluntary Dismissal by the Cerroblancos*

■ The Cerroblancos are the petitioners and thus may voluntarily dismiss their SSTA action upon written consent of all parties. (See Code Civ. Proc., § 581, subd. (b)(2).) Unlike Code of Civil Procedure section 581, subdivision (b)(1), Code of Civil Procedure section 581, subdivision (b)(2) does not mention "commencement of trial" as a limitation on when a party to the action may voluntarily dismiss that action. Thus, any party, including the plaintiff, may voluntarily dismiss an action without prejudice at any time prior to entry of a final order upon the written consent of all other parties.

■ Here, the Cerroblancos moved to dismiss without prejudice upon written consent by Ms. Ramos. However, the superior court concluded that

the Cerroblancos could not voluntarily dismiss their SSTA petition because Henderson was a party to the proceeding and Henderson had not timely consented to the dismissal. We disagree with the superior court that Henderson's consent was required because we conclude that Henderson was not a party to the Cerroblanco action.

Although the Cerroblanco Petition names Henderson as an interested party, Henderson was not a party to that action because it was improperly named and because the Cerroblanco Petition did not seek any relief against Henderson.

The Cerroblanco Petition improperly named Henderson because it identifies Henderson as the "Annuity Issuer." However, Henderson did not issue any annuity to Ms. Ramos; rather, it was Monumental Life which issued the annuity and Henderson merely was the transferee of certain annuity payments. This error can be attributed to the fact that the Cerroblancos were proceeding in propria persona and likely misunderstood the legal ramifications of the prior 2006 court-approved transfer.

■ The Cerroblanco Petition also did not seek any relief against Henderson. The Cerroblanco Petition seeks a transfer of a purported $50,000 payment due to Ms. Ramos on May 16, 2009. In the prior 2006 Henderson SSTA petition, no annuity payment of $50,000 due on May 16, 2009, is listed as being transferred to Henderson. Moreover, Henderson did not agree to pay Ms. Ramos $50,000 in May of 2009; rather, Henderson agreed to pay a lump sum of $74,250 to Ms. Ramos shortly after the order was approved in September of 2006. Thus, the interests of Henderson were not affected since the Cerroblanco Petition sought approval of a transfer of an annuity payment that did not belong to Henderson and over which Henderson had no control. Because the Cerroblanco Petition does not seek, and based upon its allegations, could not seek any relief against Henderson, Henderson is not a party to the petition. (See *Pinnacle Holdings, Inc. v. Simon* (1995) 31 Cal.App.4th 1430, 1437 [37 Cal.Rptr.2d 778] [" ' "[I]t is fundamental that a person should not be compelled to defend himself in a lawsuit when no relief is sought against him." ' "].)

Thus, because the only parties to the special proceeding, the Cerroblancos and Ms. Ramos, filed written consents to dismiss the Cerroblanco Petition, the superior court should have entered the dismissal without prejudice. (See *Wells, supra*, 29 Cal.3d at p. 784 ["Apart from certain . . . statutory exceptions, a plaintiff's right to a voluntary dismissal pursuant to subdivision 1 appears to be absolute. [Citation.] Upon the proper exercise of that right, a trial court would thereafter lack jurisdiction to enter further orders in the dismissed action."].) This is particularly appropriate in this case given that

the Cerroblanco Petition should have been filed in Tulare County Superior Court instead of in Fresno County Superior Court.

## B.  Validity of the Order Voiding the 2006 Henderson Petition

Because we conclude that the superior court should have voluntarily dismissed the Cerroblanco Petition, the order denying the petition is void. (See *Kyle, supra,* 71 Cal.App.4th at p. 909.) We expressly note that we are not determining whether the superior court was correct in its findings and rulings relating to that petition. However, the superior court, apparently on its own motion, held that the prior 2006 Henderson petition was void. Because we are not sure that our determination on the Cerroblanco Petition reaches this ruling, we must address the merits of the ruling.[4]

The superior court held that the prior 2006 Henderson petition was void because that petition did not comply with the various requirements of the SSTA and other applicable statutes, including California's usury law, and was contrary to the antiassignment provisions in the annuity contract. The 2006 Henderson transfer, however, was approved in a final court order signed by Judge M. Bruce Smith. Given that there is no dispute that Judge Smith had jurisdiction to rule on that petition, we are aware of no authority that permits one superior court judge to overrule another superior court judge, absent express statutory authority. Here, the superior court concluded that it had express statutory authority to overrule Judge Smith's prior order under section 10137 and may have concluded that it also could do so pursuant to section 10139.5, subdivision (f). We disagree with the superior court's interpretation of these two statutes.

■  "The principles governing the proper construction of a statute are well established . . . ." (*California Teachers Assn. v. Governing Bd. of Golden Valley Unified School Dist.* (2002) 98 Cal.App.4th 369, 375 [119 Cal.Rptr.2d 642].) " 'Courts must ascertain legislative intent so as to effectuate a law's purpose. [Citations.] "In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is . . . contained therein, not to

---

[4] We also have discretionary authority to review alternative grounds for reversal where the matter is of great importance to the parties, may serve to avoid future litigation, or where the issue presented is of continuing public interest and is likely to recur. (*Filipino Accountants' Assn. v. State Bd. of Accountancy* (1984) 155 Cal.App.3d 1023, 1029–1030 [204 Cal.Rptr. 913].) Here, the issue of whether a superior court may void the prior final order of another superior court in SSTA special proceedings is an issue of great importance to the parties, may serve to avoid future litigation, and is of continuing public interest and is likely to recur. Already, there are appeals filed in this court from orders denying SSTA petitions that raise this issue as an alternative ground for reversal. (See, e.g., *321 Henderson Receivables Origination LLC v. Sioteco,* F056205.)

insert what has been omitted, or to omit what has been inserted; . . ." [Citation.] Legislative intent will be determined so far as possible from the language of statutes, read as a whole, and if the words are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain its meaning. [Citation.] " 'The court should take into account matters such as *context*, the object in view, the evils to be remedied, the history of the times and of *legislation upon the same subject*, public policy, and contemporaneous construction.' " [Citations.] "Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." [Citations.]' " (*Id.* at pp. 375–376.)

Section 10139.5, subdivision (f) provides that "[t]he court shall retain continuing jurisdiction to interpret and monitor the implementation of the transfer agreement as justice requires." From the plain language of the statute, section 10139.5, subdivision (f) does not apply where the transfer agreement has been implemented. Viewed in context of section 10139.5, which provides a detailed process for court approval of an SSTA petition, subdivision (f) of that section provides a mechanism to ensure that the court-approved transfer is implemented correctly. For example, if a factoring company is not paid by the annuity issuer pursuant to the term of the court-approved transfer agreement, under section 10139.5, subdivision (f), the factoring party could return to the superior court to enforce the transfer agreement against the annuity company. Also, a party who has direct and affirmative evidence of fraud relating to the transfer could petition the court under this subsection to modify the transfer agreement to remedy the fraud.

Section 10139.5, subdivision (f), however, has no application in this case because the 2006 transfer of structured settlement payment rights has already occurred. Moreover, no party to that transfer has moved for relief relating to the implementation of the transfer. Thus, section 10139.5, subdivision (f) does not provide express authority to Judge Corona to void the 2006 final order of Judge Smith.

Similarly, section 10137 does not provide Judge Corona with the express statutory authority to void the final order of another superior court judge. Section 10137 provides:

"A transfer of structured settlement payment rights is void unless all of the following conditions are met:

"(a) The transfer of the structured settlement payment rights is fair and reasonable and in the best interest of the payee, taking into account the welfare and support of his or her dependents.

"(b) The transfer complies with the requirements of this article, will not contravene other applicable law, and is approved by a court as provided in Section 10139.5."

■ We interpret section 10137 to provide that a private transfer of structured settlement payment rights that does not include the court system will not be enforced by the courts, but that a transfer of structured settlement payment rights that is done through the court process will be enforced by the courts. Thus, once a transfer is done through the court approval process, that transfer cannot be attacked as void by any party as in violation of section 10137.

Here, the 2006 transfer of structured settlement payment rights from Ms. Ramos to Henderson was done through the court approval process, which required that Judge Smith expressly find that the transfer was fair and reasonable and in the best interest of Ms. Ramos, taking into account the welfare and support of her dependents, and that the transfer complied with the requirements of the SSTA and other applicable laws. Thus, the final order approving the transfer cannot be attacked as in violation of section 10137.

We appreciate that Judge Corona and Judge Simpson may disagree with Judge Smith that the prior 2006 Henderson petition complied with the SSTA and all applicable laws. However, that disagreement over prior judicial findings does not provide sufficient grounds for a superior court judge to void the final order of another superior court judge. Thus, absent direct and affirmative evidence of fraud, a prior court-approved transfer cannot be attacked as being void under section 10139.5, subdivision (f) or section 10137 or both. Here, the record on appeal does not indicate any direct and affirmative evidence of fraud in the 2006 Henderson petition. For example, the 2006 petition stated that, if the transfer was a loan, the equivalent interest rate would be 13.57 percent per year. Also, the annuity contract attached to the petition provided that the annuity payment rights "may not be anticipated, sold, assigned or encumbered." Therefore, the superior court erred in concluding that it could void the prior 2006 final order.

Because the order voiding the prior 2006 Henderson SSTA petition was posted on the superior court's Web site and has been disseminated via the Internet to a broad range of interested parties who may mistakenly believe that the order is valid, we will order that this decision also be posted on the superior court's Web site.

## DISPOSITION

The denial of the motion to dismiss is reversed and remanded to the superior court with directions to dismiss the petition without prejudice. This

decision will be posted to the superior court's Web site for as long as the prior order voiding the 2006 Henderson SSTA petition was posted, but for at least 30 days. Costs are denied.

Cornell, J., and Gomes, J., concurred.